Charlestown.

PORTER'S EX'RS *v.* DANIELS *et al.*

(TWO CASES.)

Decided September 10, 1877.

1877.
August Term.
A bond taken by a sheriff, in whose hands there was an execution payable to the plaintiff in the execution, and taken pursuant to the ordinance of the Virginia Convention, adopted April 30, 1861, entitled: "An ordinance to provide against the sacrifice of property, and to suspend proceedings in certain cases," which bond was conditioned that the obligors should well and truly pay the debt, interest and costs for which the execution issued, when the operation of said ordinance ceases, is valid as a common law bond, even if this ordinance is null and void.

Two actions of debt were pending in the circuit court of Jefferson county, in which C. C. Porter's executors were plaintiffs, and Benjamin F. Daniels, William B. Daniels and Dennis M. Daniels were defendants, in each of which judgments were rendered against said defendants on the 28th April 1875. To each of these judgments a *supersedeas* was allowed; and the cases were heard together in this Court.

The Hon. John Blair Hoge, Judge of the third judicial circuit, rendered the judgments below.

The following statement of the cases was prepared by GREEN, PRESIDENT, who delivered the opinion of the Court:

There were two separate actions of debt brought in the circuit court of Jefferson county, by Collin C. Porter,

in his lifetime, against the defendants, on two several
joint and several bonds, executed by the defendants to
him, each dated June 1, 1861; the first for $232.72; and
the second for $1,597.18; to each of which a condition
was attached, reciting, the first, that on March 25, 1861,
a *fi. fa.* had issued from the clerk's office of the county
court of said county, in the name of Collin C. Porter,
against Benjamin F. Daniels, for $99.27, with interest
thereon from January 1, 1861, and $14.61 costs; and the
other that on March 25, 1861, a *fi. fa.* had issued from
said clerk's office, in the name of Collin C. Porter, against
Benjamin F. Daniels, for $747.92, with interest thereon
from January 2, 1860, and $31.47 costs; and each pro-
ceeding as follows: "If therefore the said B. F. Daniels,
William B. Daniels and D. M. Daniels shall well and
truly pay the said debt, interest and costs, when the op-
eration of an ordinance 'to provide against the sacrifice
of property, and to suspend proceedings in certain cases,'
adopted by the Convention of Virginia, April 3, 1861,
ceases, then this obligation to be void; else, to remain
in full force and virtue." These bonds were given pur-
suant to the ordinance of the Convention aforesaid, it
being the forty-second ordinance of said Convention, the
second section of which provides that, "Where execu-
tions of *fieri facias* have issued and are now in the hands
of officers, whether levied or not, if the debtor offer
bond and security for the payment of the debt, interest
and costs, when the operation of this ordinance ceases,
the property shall be restored, and the bond so taken shall
be returned, as in the case of a forthcoming bond, and
shall constitute a lien on the realty of the obligors, to
the same extent and in the same manner, as forfeited
forthcoming bonds returned to the clerk's office now do;
and judgment may be had on said bonds in the same
manner and by the same proceedings, as judgments may
be obtained on forthcoming bonds under existing laws."
And the eighth section of said ordinance provided that
it should remain in force until repealed or changed by

the Convention or the General Assembly of Virginia, and if not so repealed, should expire at the end of thirty days after the first day of the next General Assembly of Virginia. See appendix of Session Acts of Virginia of 1861, p. 34. This ordinance was repealed by the eighth section of an act, passed by the Legislature of Virginia, March 29, 1862; but it was expressly provided, that such repeal should not affect any right established, accrued or accruing under, or remedy or relief provided by, said second section of said ordinance. See Session Acts of Virginia of 1861-2, p. 97.

The declarations on these bonds were in the usual form, but were demurred to in each case; the counsel for defendant insisting that this ordinance was null and void; and this being the case, that said bonds was not good as common law bonds, and no recovery could be had on them. The circuit court overruled the demurrer; and several pleas were offered, whose object were to raise the same questions in another form; these pleas were all rejected by the court. The pleas were: 1st. That there was no such ordinance. 2d. That said Convention of Virginia was not clothed with power to authorize or direct the taking of such bonds. 3d. That the sheriff required and took said bond from the principal in them, B. F. Daniels, in discharge of his property levied on under the said executions, by reason whereof they were void; and 4th, that said ordinance was subsidiary to, and in furtherance of the objects and policy of the ordinance of secession, and were therefore unconstitutional and void.

Pleas of conditions performed and conditions not broken were filed, and general replications thereto; and issues were joined; and the parties having waived a jury, and agreed to submit the cases severally to the court for decision, the court in each case rendered a judgment for the debt in the declaration mentioned, to be discharged, in the first named case by the payment of $211.73 with interest from April 27, 1875 and costs; and in the second case, to be discharged by the payment of

$1,515.94 with interest from the 27th day of April 1875 and costs.

These suits were brought June 21, 1873 ; and final judgments rendered therein, April 27, 1875; to which judgments writs of error and *supersedeas* were awarded.

*Daniel B. Lucas,* for defendants below and plaintiffs in error.

*Charles J. Faulkner,* for plaintiffs below and defendants in error.

GREEN, PRESIDENT, delivered the opinion of the Court :

The first question presented by these cases is, admitting, for the sake of argument, that the ordinance of the Virginia Convention, under which the bonds sued upon were taken was null and void : were the bonds valid as common law bonds. The mere fact, that a bond not authorized by law has been taken by an officer, does not render such bond invalid at common law. Such bonds have been frequently held void at common law, but wherever so held, it has been not simply because taken by an officer without authority, but for other and sufficient reasons appearing in each particular case. Such as that they were not voluntarily executed; that they were given to the officer, to induce him to violate his duty as such officer; or to induce him to perform a duty, he was bound to perform without the giving of such bond ; that the taking of the bond was oppressive, and it was given without consideration ; that the obligee in the bond had no interest in the subject matter ; that the taking of the bond was a violation of public policy, or was executed under circumstances, or contained provisions, which would have rendered a private bond void at law. If on the other hand such a bond is not liable to these or other sound objections, it has been constantly held valid at common law; the mere fact, that it was taken by an officer, who was unauthorized by law to take such a bond,

has never been held sufficient to render the bond invalid as a common law bond. The books are full of cases which illustrate these principles. As examples of cases, in which such bonds have been held void, because not voluntarily given, see *Byers* v. *The State,* 20 Ind. 47; *Germond &c.* v. *The People,* 1 Hill 343; *Commonwealth* v. *Kelly,* 9 Gray 259; *Boston* v. *Capen,* 7 Cush. 116. In these cases the bond was executed to avoid an imprisonment by the officer, or other penalties, to which the party was not legally liable; and in consonance with these common law principles, the Legislature of Virginia by an act passed October 1748, (See 5 Henning's Statutes at Large 518, ch. 10. §6) enacted that "it should not be lawful for any sheriff to take any obligation of or for any person in his custody, for or concerning any matter relating to his office, otherwise payable than to himself as sheriff, and dischargeable upon the prisoner's appearance, and rendering himself at the day and place, required in the writ whereupon he was arrested. And every obligation by any sheriff, taken in other manner or form by color of his office, shall be null and void; except in any special case any other obligation is or shall be by law particularly and expressly directed." And this, or a somewhat similar provision of law, has been ever since in force. The present provision is: "No officer, by color of his office, shall take any obligation otherwise than is directed by law, of or for any person in his custody; if he does, the same shall be void." See Code of West Virginia, chapter 41, section 12. In the case of *Syme* v. *Griffin,* 4 H. & M. 277, the court decided that a prison-bounds bond taken by a sheriff, with a faulty condition and with a clause to save harmless the sheriff, was void. They based their opinion, in part, on the statute of 1748, but partly on the ground, that the clause to save the sheriff harmless encouraged the officer in the neglect of a duty imposed upon him, to take the proper steps to re-arrest the prisoner, if he escaped, and was therefore contrary to public policy. In the subsequent case of *Hooe* v. *Tibbs et ux.,* 1 Munf. 501, the

Court seemed to think, that this act of Assembly had no reference to parties in execution, but only to such persons as were under arrest under mere process; and that a prison-bounds bond improperly taken to the plaintiff, though it might be void as a statutory bond, was valid as a common law bond. And in Massachusetts, in the case of *Clapp's adm'x* v. *Cofran*, 7 Mass. 98, it was held expressly, that such a bond, drawn payable to the plaintiff, was good as a common law bond. The court says: "Bonds for ease and favor are void; but they are given, not to the creditor, but to the sheriff, to obtain from him a favor and indulgence, to which the debtor is not legally entitled. If a debtor in execution will voluntarily, without fraud, imposition or duress, give a bond to his creditor, conditioned that he will continue a true prisoner without escaping, such a bond is not against the common law nor any statute; the creditor is not obliged to take such informal bond as his indemnity against an escape, for he may notwithstanding charge the sheriff in an action for the escape."

In the case of *Moore* v. *Allen, &c.*, 3 J. J. Marshall's R., p. 612, it was held, that a bond taken by a jailer to himself, that a prisoner should keep within certain prison bounds, in a case, which there was no authority to take any prison bounds-bond, but in which it was the duty of the jailer to keep the debtor prisoner, was held void at common law; the court holding that the jailer "as an officer, accepted the bond as the price for a violation of his duty." Other cases have been decided, where such a bond unauthorized by law has been held void as a common law bond for like reason, it being regarded as contrary to public policy to take such bond. See *Mitchell* v. *Vance, &c.*, 5 Munroe 528, where the bond was given to indemnify the sheriff for selling certain property levied on, which the law required him to sell without the giving of such bond. And in the case of *The Commonwealth* v. *Jackson's ex'r, &c.*, 1 Leigh 531, a bond taken by the hustings court of Williamsburg, was held

void as contrary to public policy. The court, without authority of law, had appointed a collector of public taxes and taken from him bond with security for the collection and payment of the taxes, the bond being payable to the Governor and his successors; the bond was held void. The policy of the law requiring that public taxes should be collected and accounted for by public officers duly appointed: See also *Olds &c.* v. *The State,* 6 Blackf. 91. And for a similar reason a bond executed to the State, conditioned that an officer should faithfully perform his duties as commissioner of a certain fund, which belonged to a certain county, was held void: the law requiring the bond to be given to the board of commissioners of the county; though the court say that if the fund had belonged to the State, this bond, though unauthorized by law, might have been held good as a common law bond. See *Marshall* v. *The State,* 8 Blackf. 162; and in the case of *Stuart,* v. *Lee, Governor, &c.,* 3 Call 421, a sheriff's bond in the penalty of £10,000 payable to the Governor and his successors, instead of being as the law required in the penalty of £1,000, payable to the justices, was held void; it was not a voluntary bond, as the law compelled the sheriff to execute a bond. And it could not, as a common law bond, be enforced by the successor of the Governor. A bond, given by a dealer in ardent spirits under an unconstitutional act of the Legislature, was held void as a common law bond, as it was without consideration and involuntarily executed: *Cassell* v. *Scott,* 17 Ind. 514. On the other hand many cases have been decided, in which bonds taken by officers from parties who voluntarily executed them for sufficient consideration, though unauthorized by law, have been held valid as common law bonds, there being no sound objection to the validity of them. Thus in *Hay, &c.* v. *Rogers,* 4 Mon. 226, it was held that an appeal bond taken by a clerk upon a writ of error *coram vobis,* and *supersedeas* being awarded by a court who had no jurisdiction over the

subject matter was held valid, as the bond was voluntarily executed, and the *supersedeas* had been endorsed by the clerk at the request of the obligors, and the writ of error and *supersedeas* was actually prosecuted, the obligees taking no exception to the jurisdiction of the court. It has also been held, where the law required the penalty of a constable's bond to be fixed by the county board, that a bond given in a penalty fixed by the obligors, the county board having omitted to fix the penalty, was valid as a common law bond, it having been entered into voluntarily and for a sufficient consideration : See *State* v. *Lynch*, 6 Blackf. 396. The cases of *Hooe* v. *Tibbs et ux*, 1 Munf. 501, and *Clapp's admr'x* v. *Cofran*, above referred to, are instances, in which unauthorized bonds taken by officers even when the party was in custody, has been held valid as common law bonds. In the case of *Thomas, Judge* v. *White*, 12 Mass. 367, it was held that a bond, given to a probate judge, which was unauthorized by law, was a good common law bond, as the obligors by executing the bond consented to make the probate judge the trustee for the person interested in the sum secured. In numerous other cases it has been held, that unauthorized bonds taken by officers were not for this reason only, invalid as common law bonds; but we will from the numerous cases of this character select a few only, which resemble closely the case before us. In the case of *Moore* v. *Hudson et al.*, 5 Mass. 314, an officer, to whom a writ of replevin was directed and delivered, took from the plaintiff in his own name a bond conditioned that the plaintiff should prosecute his replevin to final judgment and recover the goods on final judgment then the obligation was to be void, or else remain in full force, when the law authorized only a bond to be taken in the name of the defendant in replevin, conditioned that the plaintiff in replevin shall prosecute his suit, and also make return, and pay the damages, if judgment be rendered against him. The court held the bond nevertheless valid as a common law bond. The principles in-

volved in this case have been acted upon by the court of appeals of Virginia and in my judgment they must control the decision of the cases before us. In the case of *Johnstons* v. *Meriwether*, 3 Call 523, a forthcoming bond was taken, payable to the coroner himself, who levied the execution, instead of to the plaintiff in the execution. The condition of the bond, too, was greatly variant from that prescribed by the statute, it being: "The condition of the above obligation is such that whereas, the said Meriwether this day took into his possession sundry slaves (naming them) by virtue of an execution issued from the general court, amounting to £56 4 5d., including costs; now, if the said slaves, *together with as many more, under as good a title as the above slaves*, are delivered to the said Meriwether *when required, on the same plantation*, for sale, then the above obligation to be void; otherwise to remain in full force." The court below decided this to be a valid common law bond; and the court of appeals unanimously refused to grant a writ of error to this judgment, after an elaborate argument. This decision was approved in *Hewlett* v. *Chamberlayne*, 1 Wash. 367. In this case the defect in the forthcoming bond was, that it failed to recite the amount of the debt due on the execution. The court below held this to be a defect fatal to it as a statutory bond, and refused to award an execution upon it, on motion; yet when sued on afterwards as a common law bond, it sustained the action; and the court of appeals approved this judgment.

I will not assert, that all these cases, which I have cited, were correctly decided; but I may safely assert that not one of them can justly be urged as an authority for pronouncing the bonds sued on in these cases, as invalid as common law bonds, even if we admit that the ordinance of the Virginia Convention, under which they were taken was inoperative. The principles laid down by Chief Justice Parsons in the case of *Moore* v. *Hudson et al.*, 5 Mass. 314, which have been followed in Virginia,

seem to me to settle beyond controversy the validity of these bonds as common law bonds. In showing their application, I cannot do better than to use language almost identical with his language in delivering the opinion of the court in that case. If the defendant in the execution in these cases had tendered the sheriff sufficient forthcoming bonds, and this ordinance of the Convention was a nullity, and the sheriff had refused to receive them, he would be answerable to the defendant in the execution for damages. But as the defendants in these cases have executed bonds which would be defective as forthcoming bonds, but executed them voluntarily to obtain or retain possession of the property, and the sheriff has thereupon permitted the defendant in the execution to obtain or retain the possession of his property; the plaintiff in the executions might, if he chose, accept the bonds offered, and pursue a remedy at law upon them against the obligors, unless the bonds be void by common law or by statute.

Bonds for ease and favor are void, not only by common law, but by our statute before cited; but a bond for ease and favor is given to the officer having the custody of the body to obtain an indulgence unauthorized by law. These therefore are not bonds for ease and favor. Bonds given to an officer to indemnify him for breach of duty, or to induce him to perform a duty which he was legally bound to perform without the giving of such bonds are likewise void at common law; but these are not bonds of this description. Indeed I do not recognize any principle of common law by which the bonds in these cases are void at law. If they be void, they must be so in consequence of some statute, and there is no statute which in any manner avoids them; as we have seen, our statute before cited has no application to cases like these.

It may be urged that these bonds are more inconvenient to the obligors, than forthcoming bonds would have been. The obligors were not required to give these bonds; and if formal forthcoming bonds had been tendered, and said or-

dinance of the Virginia Convention had been void, the sheriff must have accepted these forthcoming bonds or have been answerable to the defendant in the execution for all damages, sustained by his refusal; and besides, these bonds can hardly be considered more prejudicial to the obligors, than forthcoming bonds would have been. But if these bonds were adjudged void, the consequence to the plaintiff will be mischievous. The defendant in the execution, under color of these bonds, has obtained or retained possession of his personal property, which the plaintiff had a right, if said ordinance of the Convention was void, to subject to the payment of his debts; and he would have no remedy but an action against the sheriff, which might be very inadequate; and it would be unreasonable to allow the defendants to dispute these bonds voluntarily given by them after their principal had been allowed to have the full benefit of them as legal bonds. But without regarding the inconvenience which may result to either party, these bonds must be good, unless they be declared void by the common or statute law; and I know of no law by which they are made void. It is true, one of the special pleas, offered and rejected in these cases, alleges that the sheriff *required* and took these bonds in discharge of the property levied upon. But as this property levied upon was legally held by the sheriff; his refusal to surrender it unless these bonds were given, did not render the giving of them involuntary, but simply shows they were given for a sufficient consideration. We have thus far assumed, that the ordinance of the Virginia Convention, under which these bonds were taken, was void. It is unnecessary to consider whether this assumption is well founded, for if this ordinance is valid then these bonds taken in exact accordance with the requirements of this ordinance, are valid; and, as we have seen, this ordinance, being formally repealed by the Virginia Legislature in 1862, then ceased. So that these bonds became binding on the obligors, and required them to pay the amount of the.

debts named in the conditions, when said ordinance was repealed.

The circuit court therefore did not err in overruling the demurrer in these cases, or in rejecting any of the special pleas offered. These special pleas, according to the views above expressed, were of matters entirely immaterial; and issues joined on them would have been immaterial issues. Even had I entertained different views from those above expressed, I do not think that the points intended to be raised, were properly raised by pleas such as those offered, even were it proper to raise them by pleas at all. Most, if not all of the questions, proposed to be raised by these pleas, were questions of law, which were properly raised by the demurrers to the declarations. But it is unnecessary to decide the form, in which these questions ought to have been raised, as there was, as we have seen, no real defense disclosed by any of these special pleas.

The judgment of the circuit court of Jefferson county, in each of these cases must be affirmed with costs in this Court and damages according to law.

JUDGMENTS AFFIRMED.