# CHARLESTON.

## BURNER v. NUTTER et al.

Submitted November 23, 1915.    Decided November 30, 1915.

1. PRINCIPAL AND SURETY—*Liability of Surety—Incapacity of Prinicpal.*
     A surety can not escape liability on notes executed by him as joint obligor, merely because of the legal incapacity of the principal to enter into a contract binding him. (p. 257).

2. BILLS AND NOTES—*Consideration.*
     When one who by contract sells and grants the privilege of removing and marketing sand from the bed of a stream, not technically navigable, running through or by his land, and requires a stipulated monthly compensation therefor whether the privilege granted is exercised or not during each month, does not obstruct the exercise of the right granted, and the vendee and surety execute notes for such monthly installments, though no sand is in fact removed by the vendee, payment of such notes can not be defeated on the ground of failure in the consideration for which they were executed. (p. 258).

3. NAVIGABLE WATERS—*Navigability—Question of Fact—Burden of Proof.*
     While courts take judicial notice of the navigability of all rivers wherever navigation is so generally conducted as to import common knowledge of their character and uses, the question whether a stream not so used is navigable is ordinarily one of fact, the burden of establishing which rests upon the party affirming it. (p. 258).

Error to Circuit Court, Upshur County.

Action by W. L. Burner against W. B. Nutter and others. Judgment for defendants on appeal from a justice's court, and plaintiff brings error.

*Reversed, and new trial awarded.*

*C. N. Pew* and *Young & McWhorter*, for plaintiff in error.

LYNCH, JUDGE:

In this action, commenced before a justice, for the recovery of the amount of two notes payable to plaintiff, executed by A. G. Griffin and W. B. Nutter, the latter as surety, the jury returned a directed verdict for defendant Nutter, and thereon the court entered the judgment brought here on writ of error.

Because of Griffin's insanity, the case proceeded to trial against Nutter as if he were sole defendant. Besides the plea of non-assumpsit, on which issue was joined, defendant also tendered and over objection was permitted to file two special pleas. By one plea he averred his suretyship, that he had no interest in the subject matter of the contract between plaintiff and Giffin regarding sand and right to remove it from the bed of the Buckhannon river, its subsequent annulment by plaintiff, whereby, it is averred, the consideration for the notes wholly failed. By the other plea was averred the insanity of the principal at the date of the notes sued on.

By contract dated July 9, 1910, plaintiff granted to Giffin the exclusive privilege of removing sand from the bed of the Buckhannon river, in so far as that stream extended along or through plaintiff's land, in consideration of six cents for each cubic yard removed, with the provision therein expressed that at least 300 yards should be removed each month, and paid for at that rate whether so removed or not; and Burner therein reserved the right to annul the contract upon Giffin's failure to comply therewith. No provision was made for credit on other operations under the agreement. The notes involved were made in lieu of cash payment for sand not removed under the privileges so granted. Indeed, Giffin failed to exercise any privilege or right conferred by the contract.

Whatever may have been the mental condition of the principal at the date of the contract or notes, a question as to which the proof is meager, he then was engaged in the active pursuit of his usual occupation, though before and since he may have been, and perhaps was, confined as a patient in a hospital for the insane. If so, defendant presumably was aware of the necessity for such confinement. They lived in the same community, and knew each other as friends and acquaintances. Their relations were intimate and cordial. Besides, Giffin's contractual incapacity may have induced plaintiff to require surety for payment of the notes. Indeed, defendant virtually admits his credit was pledged because of a desire on his part to render some assistance to a friend unfortunately afflicted. He did not in terms so state, but that inference is deducible from his testimony.

Whether a surety is bound by the terms of a joint undertaking when, without knowledge on his part, the principal obligor, because of mental unsoundness, is disqualified to enter into a binding contract, it is not now necessary to determine, for reasons stated. And, certainly, the subsequent insanity of the principal would not discharge his co-obligor. The mere incapacity of the former to contract would not so operate. 32 Cyc. 27. Sureties must respond to their engagements whenever they pledge their credit to the fulfillment of the contracts of persons legally incapacitated to contract, as infants or other persons *non sui juris,* excepting always obligations procured through fraudulent practices. Mere personal defenses enure to the benefit of the principal obligor only; the surety in a certain sense becomes the real sponsor for the indebtedness assumed. 1 Brandt, Sur. & Guar. §171; *Bank v. Dillon,* 30 Vt. 122; *Smythe* v. *Head,* 45 Am. Dec. 750; *Hicks* v. *Randolph,* 3 Baxt. 352; *Davis v. Statts,* 43 Ind. 103. Or, as said by Judge Dillon in *Jones* v. *Crosthwaite,* 17 Ia. 393, "the general rule that a discharge of the principal releases the surety does not apply where a person *sui juris* becomes surety for any person incapable of contracting". Insanity of the principal does not relieve the surety. 1 Elliott, Contracts §385, note 6; *Kyger* v. *Sipe,* 89 Va. 507; Chitty, Contracts 499; *Lee* v. *Yandell,* 69 Tex. 34.

Was there a total failure in the consideration for which the notes were executed? This defense was predicated in part upon the theory that, though in the river bed the sand was abundant, easily accessible and apparently valuable as building material, a use to which it was to be devoted, and though Giffin had the right to remove and sell it, he did not remove or sell any of it. This position we think is not defensible. The mere statement shows it to be untenable. Plaintiff in nowise obstructed the exercise of the privilege granted. The contract subjected his land to an easement of way to and from the river, and by no default of his did he prevent the use and enjoyment of the privileges conferred by his agreement.

But the question on which was based the instruction to find for defendant was whether or not the Buckhannon river is a navigable stream, and as such exclusively under the control

and dominion of the state to the extent precluding the exercise of the right therefrom to remove sand contained in the bed of the stream. Its character is not disclosed in the evidence. The trial court, without any proof addressed to that subject, assumed to know judicially that the river was navigable.

There are three classes of navigable streams in this country. The first class embraces those legally deemed navigable in the technical sense of the term, though they may not be used or usable for the purposes of navigation. They are usually denominated tidal streams, because affected by the ebb and flow of the tides. The navigable non-tidal or fresh water streams, constituting the second class, and generally those of the first class, serve as the medium for transportation of commercial products to market. They are public highways; and, by reason of their public character and uses, when matter of common knowledge, courts may take judicial notice that they are navigable; but not so of the third class, consisting of streams which are not technically navigable, and are termed "floatable" because capable of carrying logs and rafts and other similar articles of commerce. As these distinctions are clearly noted and amply discussed by Judge GREEN in *Gaston* v. *Mace,* 33 W. Va. 15, 20, nothing further need be said of them, except that manifestly the Buckhannon river does not fall within any classification authorizing the assumption of judicial knowledge of its navigability. Its nature, character and uses are not disclosed sufficiently to justify any particular conclusion concerning its navigability. As was said in *Gaston* v. *Mace, supra,* quoting approvingly from *Brown* v. *Chadbourne,* 31 Me. 9, in the case of a fresh water stream the presumption arises, in the absence of proof to the contrary, that it is private property in so far as it bounds or runs through the lands of plaintiff, and on defendant rests the burden of establishing by satisfactory proof that it is navigable, or in its natural condition has sufficient water capacity to float logs or timber rafts.

Gould on Waters, §112, says by the common law rule a river is *prima facie* navigable only so far as the tide ebbs and flows in it, and, in the case of doubt, the burden of proof is upon those who allege navigability above that point, citing *Rhodes* v. *Otis,* 33 Ala. 578, and other cases. 1 Farnham on

Waters, §26, says: "The one who claims the stream to be navigable has the burden of proving that it is in fact susceptible of valuable use for commercial purposes in its natural state, unaided by artificial means and devices". Although conflicting with our decision in *Gaston* v. *Mace,* the first point of the syllabus in the Rhodes-Otis case says: "All streams below tidewater being *prima facie* public, while all above it are *prima facie* private, the onus of proof is on the party who claims that a stream above tidewater is navigable". With a less degree of limitation, and more in accord with *Gaston* v. *Mace,* 29 Cyc. 293 says: "While the courts will take judicial notice of the navigability of all tidewater and particular rivers of the country on which navigation is conducted as a matter of common knowledge, the question whether or not a stream is navigable is ordinarily a question of fact, the burden of establishing which rests upon the party affirming it".

The conclusion necessarily follows, from what has been said, that defendant can not escape liability on the notes by pleading the incompetency of his principal due to his mental condition; or the failure of the latter to exercise the privileges conferred by the contract out of which the notes arise; or the subsequent annulment thereof by plaintiff, as therein allowed; or the assumed nature and character of the river in question; and that the judgment, being plainly erroneous, must be reversed and a new trial awarded plaintiff. Such will be the effect of the order entered here.

> *Reversed, and new trial awarded.*