# Staunton

## Frank Boerner v. Frank R. McCallister.

September 14, 1955.

Record No. 4366.

Present, All the Justices.

The opinion states the case.

*Roscoe B. Stephenson, Jr.* and *James P. Hart, Jr.*, for the appellant.

*J. C. Goodwin*, for the appellee.

Whittle, J., delivered the opinion of the court.

McCallister filed a bill in chancery against Boerner seeking to enjoin and restrain him from trespassing on and over his land, and to enjoin him from fishing in that portion of the Jackson River which passes through his property. The bill alleged that the tract of land owned by McCallister had been conveyed to Richard Morris by William Jackson in 1772 and lay on both sides of the river, it being one of the tracts granted under authority of the Crown of England, and included not only the lands bordering on the river, but "the rivers, waters and watercourses therein contained, together with the privilege of hunting, hawking, fishing, fowling", etc.; that the said land had been conveyed by divers mesne conveyances to one C. H. Andrews who had conveyed it to McCallister.

The bill further alleged that on numerous occasions Boerner had come upon the lands of McCallister without his consent and against his will, for the purpose of fishing in the waters of the river as it flows through and across his lands, in violation of § 29-165, Code of Virginia, 1950; that McCallister had repeatedly requested and advised Boerner to stay off the lands and not to trespass thereon or to fish in the waters of Jackson River flowing through his lands; that Boerner had stated to McCallister "in no uncertain terms that your complainant could not stop the defendant, and that he intended to continue to fish in said stream where it flows through the complainant's lands."

The bill further alleged that the fishing on the property constituted a trespass damaging McCallister's right to privacy and ownership, interfering with his right to fish unmolested in his own stream, and impaired his use and enjoyment of his said lands and waters; that "the repetition with which the defendant has committed such trespassing and his avowed intention to continue so to do, not being adequately compensable in damages, creates such a condition that your complainant has no plain, adequate and complete remedy at law, and so he must resort to a court of equity for injunctive relief to inhibit, restrain and enjoin the said defendant

from trespassing upon his lands and waters, against the will and without the consent or permission of your complainant; and openly and hostilely defying and insulting your complainant so as to tend to cause violence and breach of the peace"; hence the prayer for injunctive relief.

Boerner filed a demurrer to the bill in which he asserted that the bill showed on its face that McCallister was seeking to deny defendant and the public the right to fish in a river belonging to the Commonwealth of Virginia; that the suit was one to try title to land and was improperly brought in equity; that McCallister had prosecuted Boerner criminally and equity will not enforce a penal statute; that McCallister had alleged no irreparable injury; that there was an adequate remedy at law, and that the court should take judicial notice that the Jackson River is floatable for logs and was used commercially for that purpose and therefore the public can fish therein.

The court, overruling the demurrer, held that the suit was not one to try title to land; that the bill appeared to be "a pure bill for an injunction to prevent a trespass"; that the complainant does not have an adequate remedy at law; that judgment at law would not protect complainant's alleged rights; that the purpose of the bill was to avoid a multiplicity of law actions and that as Boerner had no personal claim in the river as it passed through the lands of McCallister he could not complain that McCallister is seeking to enjoin his trespass rather than to embarrass him [Boerner] with numerous actions at law or even criminal prosecutions.

In the court's written opinion overruling the demurrer it is stated: "He [Boerner] complains, however, that he should not be required, at great expense, to defend this proceeding. In the oral argument it was brought to his attention that he does not have to defend this suit at any expense, if he would agree with the complainant not to trespass again over the lands or fish in the river where it passes through the lands of the complainant. This he is not willing to do." The court further held that the navigability of Jackson River was a factual question.

We are of the opinion that the allegations in the bill stated a cause for injunctive relief and therefore the demurrer was properly overruled.

As a general rule, where an injury committed by one against another is being constantly repeated, so that complainant's remedy

at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction, the prevention of a multiplicity of actions at law being one of the special grounds of equity jurisdiction. 43 C. J. S., Injunctions, § 24(a), p. 449. This is so, even though each individual act of trespass is in itself trivial, or the damage is trifling, nominal or insubstantial, and despite the fact that no single trespass causes irreparable injury. The injury is deemed irreparable and the owner protected in the enjoyment of his property whether such be sentimental or pecuniary. 43 C. J. S., Injunctions, § 64(a), pp. 526, 527. See also *Long's Baggage Transfer Co.* v. *Burford*, 144 Va. 339, 132 S. E. 355; *Mears* v. *Colonial Beach*, 166 Va. 278, 184 S. E. 175.

The order overruling the demurrer required Boerner to answer the bill and further provided that the case be heard *ore tenus*. The answer to the bill denied generally the allegations thereof, and specifically denied that the patent referred to in the bill included anything other than land, asserting that it did not include any water rights or "beds or bottoms of streams".

The answer admitted that Boerner had fished in the waters of Jackson River "which belongs to the Commonwealth of Virginia". It denied, however, that he had fished in the river "at a point plaintiff owned land on both sides thereof". It asserted that "even if complainant's title covers land on both sides of Jackson River where defendant was fishing, and even if his title was derived from a colonial grant which gave the original patentee title to the bed of the river * * * said river has been used commercially for small boats, batteaus, or canoes, by a small steamboat, and for the commercial floating of logs, and is therefore navigable in fact, within the meaning of the decisions of the courts of the Commonwealth of Virginia, and is held by the owner subject to the public right to use same and fish therein, pursuant to which right defendant was fishing in said river; and that the Jackson River, its waters and its bottom is a highway for the people of the Commonwealth of Virginia and a public river, and defendant had a right to fish therein, * * *."

The bill and answer formed the issues to be determined.

The court, after hearing evidence *ore tenus*, entered the decree appealed from which stated in part:

"* * * (T)he court doth find as a fact from the evidence that the Jackson River, above the City of Covington and at Natural Well, where the same flows through the lands of the complainant, is a

non-navigable stream and consequently private, the bed of which is vested in the complainant, and is not public or vested in the public. The court doth accordingly adjudge, order and decree that the defendant, Frank R. Boerner be, and he is hereby permanently restrained and enjoined from coming upon the lands and waters of the complainant for the purpose of fishing, hunting, or any other purpose, without the prior written consent and permission of the complainant."

To the entry of this decree Boerner filed assignments of error, the first of which, charging that the court erred in overruling the defendant's demurrer to the bill, has heretofore been treated.

The next assignment charges "that the court erred in granting an injunction enjoining appellant from fishing on appellee's lands, appellant having denied and traversed appellee's allegation that he was on the appellee's lands, and appellee having failed to introduce evidence showing that appellant was on appellee's lands."

There is no merit in this assignment. In addition to other evidence, Boerner admitted in his testimony: "I have been in the river through his [McCallister's] property, which he claims he owns. I have fished it many times and about two years ago when we were arrested Mr. McCallister and I did have words."

It was evident that Boerner defiantly intended to continue to fish in the waters of the river claimed by McCallister, contending that McCallister had no right to prohibit him from so doing.

The next assignment of error challenges McCallister's ownership of the bed of the stream, contending that the title thereto is in the Commonwealth.

The evidence discloses that McCallister owns the land on both sides of the river at the point in question, his title going back to a colonial grant recorded in Virginia State Library, Archives Division, Land Office, in Book of Patents No. 29, which patent was recorded between 1749 and 1751, at page 148. The grant to William Jackson is in the name of George II, King of Great Britain, etc., through William Gooch, Esquire, Lieutenant Governor and Commander in Chief of the Colony and Dominion of Virginia. It is signed by Thomas Lee.

It is disclosed by the grant that the grantee acquired title to "all the woods, underwoods, swamps, marshes, low grounds, meadows, feedings and his due share of all veins, mines and quarries, as well discovered as not discovered within the bounds aforesaid, and being

part of the said quantity of the said 270 acres of land and the rivers, waters and water courses therein contained, together with the privilege of hunting, hawking, fishing, fowling and all other profits, commodities and hereditaments whatsoever, to the same or any part thereof belonging or in any wise appertaining."

At the time of the grant (between 1749 and 1751) there was no law preventing the conveyance of "the rivers, waters and water courses therein contained", therefore the grantee took title under the grant in this case to that part of Jackson River within the grant. The common law of England continues in force in this jurisdiction except as altered by the General Assembly. § 1-10, Code of Virginia, 1950. It has not been changed by statute so as to affect the ownership of the beds of streams granted prior to 1780 where the land lies in the eastern or tidewater section, or granted prior to 1802 where the land lies in the western part of the State, the situs of the present proceeding. 20 M. J., Waters and Water-courses, § 11, p. 35; *Gaston* v. *Mace*, 33 W. Va. 14, 10 S. E. 60, 25 Am. St. Rep. 848, 5 L. R. A. 392.

The statutes of 1780 and 1802 made grants by the "Land Office" subsequent to their passage void as to beds of streams, but they specifically exempted grants made by the "former government" prior to their passage. Hence the title to the bed of the river lying within the boundary of the McCallister property belongs to him as it was undeniably embraced within the grant above referred to. The bed of non-navigable streams and the waters are owned by the riparian owners. *Hampton* v. *Watson*, 119 Va. 95, 89 S. E. 81, L. R. A. 1916F 189; *Jennings* v. *Marston*, 121 Va. 79, 92 S. E. 821, 7 A. L. R. 855.

■ Boerner next contends that even though the Jackson River at this point is properly embraced within the grant, it being a floatable or navigable stream, should be held to be the property of the Commonwealth which would give the public the right to fish therein. In view of our conclusion as later expressed, that Boerner has not proved the river navigable, it is not necessary to decide this question; yet there is persuasive authority to the effect that even though a stream may be floatable, and in some instances navigable, the public interest therein is limited to the right of navigation; the only restraint placed upon the owner being that he cannot obstruct or impede the public right. *James River and Kanawha Power Co.* v. *Old Dominion Iron and Steel Corp.*, 138 Va. 461, 469, 122 S. E.

344; *Miller* v. *Commonwealth*, 159 Va. 924, 166 S. E. 557; *Mass.* v. *New York*, 271 U. S. 65, 70 L. ed. 838, 46 S. Ct. 357; 56 Am. Jur., Waters, § 470, p. 884.

We agree with the chancellor that the question of whether or not the river at the point in controversy is a floatable or navigable stream was a factual one to be determined upon the evidence presented. The test is whether the stream is used or is susceptible of being used in its natural and ordinary condition "as a highway for commerce on which trade and travel are or may be conducted in the customary modes of trade and travel on water". 20 M. J., Waters and Watercourses, § 21, p. 59; *Ewell* v. *Lambert*, 177 Va. 222, 13 S. E. (2d) 333; *United States* v. *Appalachian Elec. Power Co.* (Va.), 23 F. Supp. 83, reversed on another point in 311 U. S. 377, 61 S. Ct. 291, 85 L. ed. 243.

The decree deciding the issue states: "* * * (T)he court doth find as a fact from the evidence that the Jackson River, above the City of Covington at Natural Well, where the same flows through the lands of the complainant [McCallister], is a non-navigable stream and consequently private, the bed of which is vested in the complainant, and is not public * * *."

That there was substantial evidence upon which to base this conclusion cannot be successfully controverted. Boerner asserted that the river was navigable and the burden rested upon him to establish this fact. *Burner* v. *Nutter*, 77 W. Va. 256, 87 S. E. 359; *Rhodes* v. *Otis*, 33 Ala. 578, 73 Am. Dec. 439; *Case* v. *Woolley*, 6 Dana 17, 32 Am. Dec. 54. He attempted to carry the burden by showing that between 1901 and 1907 several efforts were made to float logs down the Jackson River "during floodtime" to a mill located at Dry Run, now within the corporate limits of the City of Covington. This method of transportation evidently proved unsatisfactory as no such further attempts have been made. A great preponderance of the evidence establishes the fact that the stream at the point in question is neither floatable nor navigable.

The ruling of the chancellor on an issue where conflicting evidence is heard *ore tenus* is entitled to special respect. "A decree in a chancery suit, where conflicting evidence is heard in open court, has the weight of a jury's verdict, or the weight of a common law judgment in a case heard by the court without the intervention of a jury. The case comes to the appellate court with all the conflicts in the evidence resolved in favor of the prevailing party." *Evans* v.

*Slone,* 196 Va. 231, 239, 83 S. E. (2d) 385, 390; 1 M. J., Appeal and Error, §§ 277, 278, pp. 707, *et seq.*

For the reasons stated the decree is

*Affirmed.*