Kenneth L. **MUNDY** and Alice F. **Mundy, Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 121–88L.

United States Claims Court.

Nov. 16, 1990.

Neil V. Birkhoff, Roanoke, Va., for plaintiffs.

K. Jack Haugrud and George William Sherk, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

■ This takings case is before the court on the defendant's motion for summary judgment. As part of its flood control efforts, the United States Army Corps of Engineers impounds and periodically releases water from the Gathright Dam, 38 miles upstream of the plaintiffs' property. The plaintiffs allege that the actions of the Corps of Engineers flood the plaintiffs' low-water bridge over the Jackson River, rendering their property inaccessible during the periods of flooding, and diminishing the value of the property. Therefore, the plaintiffs argue that they are entitled to compensation under the takings clause of the United States Constitution. Defendant argues that, because the Jackson River is navigable, the plaintiffs have no property interest in the riverbed over which the bridge passes; therefore, the flooding of the bridge is not a compensable taking. Whether or not plaintiffs may be compensated for the diminution in value of their land depends on whether the plaintiffs have a valid easement over the bed of the Jackson River. The validity of their easement in turn depends on whether or not the Jackson River is in fact navigable. Navigability is a question of fact, and the burden of proof is on the party asserting navigability. After a careful review of the entire record, and after hearing oral argument, the court finds that the defendant has failed to make a showing that the Jackson River is navigable. Triable issues of fact essential to the resolution of this case remain unanswered, and therefore, the defendant's motion for summary judgment is denied.

## FACTS

In 1946, Congress authorized construction of the Gathright Dam/Lake Moomaw water quality and flood control project on the Jackson River near Covington, Virginia. The dam was constructed by the United States Army Corps of Engineers (the Corps) between 1970 and 1981. Impoundment of water behind the dam began in December 1979 and was completed in April 1982. Plaintiffs' 100–acre farm is located approximately 38 miles downstream from the dam. Plaintiffs have vehicular access to their property via a bridge which was constructed across the bed of the Jackson River at a point where they claim to hold an easement.

According to the plaintiffs, the easement dates back to the ownership of the property on both the north and south sides of the river by the Chesapeake and Ohio Railway Company (Railway Company). In 1944 the Railway Company conveyed 100 acres on the north side of the Jackson River to A.P. Lee. As part of the conveyance, the Railway Company created an easement across the bed of the Jackson River. The property was conveyed by the Lees to Fletcher Smith on August 7, 1946 by a deed which specifically referred to the "A.P. Lee" deed described above. In 1963, the Smiths conveyed the property and the easement to Leo Carter and his wife. The plaintiffs purchased the property and the easement from the Carters in 1975.

In 1969 or 1970, Carter built a low-water bridge across the bed of the Jackson River at the point of the purported easement. The bridge consists of cement-filled 50 gallon drums placed in pairs supporting concrete slabs. The plaintiffs use the bridge for vehicular access to the property. When the bridge is impassable, a swinging footbridge is the only means of access to the property. The plaintiffs claim that the low-water bridge is the only reasonable and economical means of vehicular access to the property.

The plaintiffs claim that, since the commencement of operations at the Gathright Dam, the low-water bridge has been inundated frequently and regularly, preventing access to the property. During flood conditions, the Corps releases water from Gathright Dam, flooding plaintiffs' bridge approximately 11 hours later. When the bridge is flooded, water covers it three to four inches deep on the east end and 12 to 18 inches deep on the west end. The plain-

tiffs claim that, prior to operation of the dam, they were unable to use the bridge approximately 20 to 30 days of the year and flood waters took four to five days to recede. Now, according to the plaintiffs, flood waters take two to three weeks to subside.

The plaintiffs claim that the frequency and regularity of the inundation of the bridge has diminished the value of the property and resulted in loss of the use and enjoyment of the property which is compensable as a "taking" under the Fifth Amendment to the United States Constitution. The plaintiffs argue that the easement over the bed of the Jackson River is valid because the Jackson River is non-navigable according to Virginia case law. Therefore, the plaintiffs argue, the bed of the Jackson River is owned by the riparian landowners. Alternatively, the plaintiffs argue that if the bed of the river is owned by the Commonwealth of Virginia, possession plus claim of title is equal to ownership for purposes of an inverse condemnation action. The plaintiffs allege that defendant, as a trespasser, cannot introduce evidence of ownership in a third party to overcome the plaintiffs' *prima facie* claim of ownership.[*]

Defendant claims that, based on case precedent, the Jackson River is navigable and therefore, title to the riverbed is in the Commonwealth of Virginia. Since only the Commonwealth could grant an easement over the bed of the river, the easement which the plaintiffs claim to hold as a result of the Carter conveyance is invalid. Therefore, the defendant contends that the flooding of the bridge is not a taking for which the plaintiffs may properly be compensated.

## DISCUSSION

In order to resolve the takings claim, the court must first determine who holds title to the bed of the Jackson River at the point at which it is crossed by the plaintiffs' lowwater bridge. Title to a riverbed turns on the question of the navigability of the river in question. It is well

established that the state owns the bed of any navigable river. *See United States v. Holt State Bank*, 270 U.S. 49, 54–55, 46 S.Ct. 197, 198–199, 70 L.Ed. 465 (1926); *United States v. Utah*, 283 U.S. 64, 75, 51 S.Ct. 438, 440, 75 L.Ed. 844 (1931). Thus, the Commonwealth of Virginia owns the beds of all navigable rivers located within its boundaries. *Oliver v. City of Richmond*, 165 Va. 538, 541, 178 S.E. 48, 49 (1935), *cert. denied*, 298 U.S. 674, 56 S.Ct. 942, 80 L.Ed. 1396 (1936). In contrast, state law governs ownership of the beds of non-navigable rivers. In Virginia, the riparian landowners own the beds of non-navigable rivers within the commonwealth. *Boerner v. McCallister*, 197 Va. 169, 174, 89 S.E.2d 23, 27 (1955).

Determination of navigability is a question of fact. *Id.* at 175, 89 S.E.2d at 27. Defendant, as the party claiming navigability, bears the burden of proof on the issue of navigability. *Id.* The takings issue is ripe for summary judgment only if the parties do not dispute the material facts necessary to determine navigability. In this case, neither party has offered any evidence of navigability. Instead, the parties rely on existing case law.

The plaintiff argues that the Supreme Court of Virginia has on two occasions found the Jackson River to be non-navigable, thus giving title to the riverbed to the private riparian landowners along the river. The defendant argues that the lower portion of the Jackson River has been deemed navigable by the U.S. Court of Appeals for the Fourth Circuit, and therefore title to the riverbed is vested in the Commonwealth of Virginia.

In *Hot Springs Lumber & Mfg. Co. v. Revercomb*, 110 Va. 240, 65 S.E. 557 (1909), the Supreme Court of Virginia held that the Jackson River at river mile (RM) 50 was not navigable. The court cited evidence that the river could not in its natural state be used as a means of floating logs. Even during periods of high water, the use of the river was impracticable. The swift current caused by precipitation created con-

* The court declines to rule at this time on the plaintiffs' alternative theories.

ditions which threw the logs onto the river banks and carried them long distances into surrounding fields. Many years later, in *Boerner*, the Supreme Court of Virginia held that the portion of the Jackson River above the City of Covington at Natural Well between RM 40–41 was non-navigable. In that case, however, the court limited its finding to the portion of the river at the point in controversy. 197 Va. at 175, 89 S.E.2d at 27. Neither case addresses the portion of the river in question here, which is at RM 5.

Defendant argues that the Court of Appeals for the Fourth Circuit in *Loving v. Alexander*, 745 F.2d 861 (4th Cir.1984), found that the river below Covington was navigable. Defendant overstates the scope of the court's holding in *Loving*. In that case, addressing the navigability of the Jackson River between RM 23.9 and RM 43, the Fourth Circuit stated only that the navigability of the lower Jackson *had not been challenged. Id.* at 865. Any *dicta* in the *Loving* case regarding the navigability of the Jackson at points not at issue in that case are entitled to no weight here.

A river can be navigable in some parts and non-navigable in others. *United States v. Appalachian Electric Power Co.*, 311 U.S. 377, 410, 61 S.Ct. 291, 300–301, 85 L.Ed. 243 (1940). None of the cases cited by either of the parties control the outcome of this case, because those cases do not address the factual question of navigability at the point where the plaintiffs' bridge crosses the river. The plaintiffs now challenge the navigability of that portion of the river.

### CONCLUSION

For the purposes of the instant dispute, the court must determine whether the Jackson River at RM 5—where plaintiff claims to have an easement—is a navigable river. The parties have not provided the court with sufficient evidence on which to base such a determination. Summary judgment is appropriate where no genuine issues of material fact are in dispute, and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). That is

not the situation here. Significant material issues of fact indispensable to the determination of navigability remain unaddressed. Therefore, the defendant's motion for summary judgment is denied. The parties shall complete discovery within 90 days from the date of this opinion.