JUSTICE KOONTZ, with whom JUSTICE COMPTON
joins, dissenting.
I respectfully dissent.
The pertinent facts are not in dispute. On April 14, 1992 and other unspecified occasions, Charles A. Kraft, Jr. fished from a boat floating in the navigable waters of that part of the Jackson River in Alleghany County adjacent to land owned by the appellees. Kraft did not walk on the banks of, wade upon the bed of, or anchor his boat in that part of the river. Appellees claim to own the stream beds under the Jackson River adjacent to their property and the exclusive *282 fishing rights in that part of it above those beds pursuant to grants from the English Crown in 1750 (the Jackson patent) and in 1769 (the Morris patent).
The majority concludes that the landowners have established that they are the successors in title to the patentees of the Jackson and Morris patents and that those patents granted exclusive fishing rights by the language “together with the Privileges of Hunting, Hawking, Fishing [and] Fowling” sufficient to enjoin Kraft, as a trespasser, from fishing in this part of the Jackson River. In my view, the result of the majority’s conclusions is neither supported by the established facts nor mandated by the law.
For purposes of explaining my view, I will assume, without addressing the issue, that the majority has correctly concluded that the landowners have established that they acquired ownership of the stream beds and appurtenant fishing rights conveyed with them through the grants of the English Crown. I concur that prior decisions of this Court, and the view of most commentators, affirm the power of the Crown to make such grants generally. See Boerner v. McCallister, 197 Va. 169, 174, 89 S.E.2d 23, 26-27 (1955). I disagree with the majority that these specific grants provide the landowners with the exclusive right to fish the navigable waters above their lands. The exclusivity of these fishing rights is an inherent part of the issue presented by this appeal.
As revealed by the facts, here we are not concerned with an entry upon the banks or the stream bed of the river by Kraft for the purpose of fishing in the water of the river. Kraft was lawfully in the water at that part of the river in question. Moreover, the fish he intended to catch were in a state of fera naturae, free to swim up and down the river and free of any claim of private ownership. Fish in navigable waters are distinctly different from oysters, and other shell fish, restricted by their very nature to particular water beds and, thus, subject to private ownership. See generally Commonwealth v. Morgan, 225 Va. 517, 303 S.E.2d 899 (1983) (concerning ownership to oyster beds). Under these facts, it is clear that Kraft did not enter upon the property of the landowners even if the landowners established their ownership of the stream beds.
I turn then to the fishing rights asserted by the landowners. There is considerable debate about the historical rights and responsibilities of the English Crown with respect to navigable waters. In De Jure Maris, Lord Hale defined those rights and responsibilities by three concepts: (1) the jus publicum, or the rights of the general public; (2) *283 the jus regium, or the right of the sovereign to manage resources for the benefit of the public; and (3) the jus privatum, or the private right of tide. See Shively v. Bowlby, 152 U.S. 1, 11-13 (1894). Rights of commerce, specifically navigation and fishing, are jus publicum, and, accordingly, ought not to be extinguished by the transfer of a jus privatum. See id.
The concepts of jus publicum and jus regium have been construed, some commentators suggest erroneously so, in support of the theory of common law public trust to give the public a proprietary interest in, among other things, fishing rights on navigable waters. See Richard Ausness, Water Rights, the Public Trust Doctrine, and the Protection of Instream Uses, 1986 U. Ill. L. Rev. 407, 411-12 (1986). I do not believe, however, that this appeal raises the issue of a public trust or need be resolved by application of that doctrine.
Rather, the issue here centers on a dispute between private parties, and whether one party has established its right to an injunction prohibiting the other party from entering its land via a navigable waterway for the purpose of fishing in that waterway. Accordingly, the burden rests with the party seeking the injunction to show that it is so entitled. In my view, the landowners have not met that burden.
The majority concludes, as a matter of state law, “that the Crown had the right to grant the bottoms of the river and, therefore, exclusive fishing rights to Jackson and Morris.” That conclusion, however, does not support the proposition that the Crown necessarily intended to grant exclusive fishing rights or that it in fact did so in the patents in question. The majority cites no authority in support of its conclusion that the fishing rights were necessarily exclusive or that the Crown could not grant less than exclusive fishing rights. In any event, the language of the patents does not specifically grant exclusive fishing rights.
With respect to the landowners who trace their rights back to the Jackson patent, they have shown nothing more than a grant of “Privileges of . . . Fishing” on the lands granted under the patents. (Emphasis added.) The landowners claiming under the Morris grant can show no more than this, and must do so by relying on a liberal interpretation of the term “etc.” in that grant by relating it back to a previous grant containing language nearly identical to that of the Jackson patent.
Courts have traditionally construed royal patents and other land grants narrowly and with great caution where the potential loss of a jus publicum is at issue. See e.g., Martin v. Waddell, 41 U. S. (16 *284 Pet.) 367, 408-11 (1842). I am of the opinion that the use of the term privileges in the patents, when narrowly construed, confers no more than the right of the landowners to exclude others from entering the land conveyed for the purpose of fishing. That is, the Crown was not retaining for itself a jus privatum to enter the land, or to permit others to do so, for fishing.
By contrast, the patents specifically do not, because under the better view they could not, convey the common of piscary — an exclusive right to take fish in a state of fera natures — because that right was, as noted above, a jus publicum not subject to transfer from the Crown to a private citizen. In short, while the Crown could transfer its private right of title to entry on the land for the purpose of fishing, it could not transfer the public right to take fish from the waters thereon by persons otherwise lawfully in those waters.
Here, Kraft lawfully navigated the river overrunning the stream bed owned by the landowners. So long as he remained in navigable waters and did not touch the banks or drag the stream bed with nets, seines or an anchor, he was not trespassing on the landowners’ property. Since, in my view, the landowners established no more than a right to prohibit fishing by excluding others from entry upon their land for that purpose, I would hold that the trial court erred in awarding an injunction against Kraft which prohibited him from fishing while lawfully in the navigable waters of the river.