# Richmond

## The Chesapeake & Ohio Railway Company v. Robert T. Willis and Mildred E. Willis.

December 1, 1958.

Record No. 4791.

Present, All the Justices.

The opinion states the case.

*J. M. Perry*, for the appellant.

*J. W. C. Johnson* and *C. C. Collins*, for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

On April 6, 1953, The Chespeake & Ohio Railway Company, hereinafter referred to as the plaintiff, filed its bill against Robert T. Willis and Mildred E. Willis, hereinafter referred to as the defendants, praying for specific performance of certain covenants in three deeds whereby the defendants' remote predecessors in title had conveyed to the Virginia Central Railroad Company, the plaintiff's remote predecessor in title, certain lands in Bath and Alleghany counties for the right of way along which the plaintiff now operates its trains. The bill alleged that the covenants in the deeds ran with the land and bound the grantors and those claiming under them, including the defendants, to erect and maintain fences upon the residue of the grantors' lands up to the right of way of the railroad, so as to prevent their stock from going onto the track, and that if sufficient fences were not so constructed and maintained the grantors and those claiming under them, including the defendants, would not hold the Railway Company liable for the value of their stock killed or injured on the railroad.

The bill further alleged that although requested so to do, the defendants had refused to construct and maintain such fences and as the result thereof certain stock owned by the defendant, Robert T. Willis, had gone onto the railroad track and had been killed by trains operated by the plaintiff, and that he had filed an action at law against the plaintiff to recover damages for the loss of such stock.

The prayer of the bill was that the covenants to construct and maintain the fences be specifically enforced against the defendants

and that the defendant, Robert T. Willis, be enjoined from prosecuting his action at law against the plaintiff for loss of his stock.

The defendants pleaded the ten-year statute of limitations. They also answered, claiming among other defenses that the covenants did not bind them to build the fences but merely bound the grantors in the deeds to do so; that the covenants did not run with the land, but if so, they have long since been broken and ceased to be binding on the land. Moreover, the defendants alleged that under the provisions of Code, § 56-429, it was the duty and obligation of the plaintiff Railway Company to fence its line and roadbed so as to prevent stock from going thereon.

After depositions had been taken the lower court held and decreed that the covenants in the deeds ran with the land, creating a continual obligation on the grantors and their successors in title which had not been barred by the statute of limitations. It further held and decreed that while the covenants were covenants running with the land, they were broken "during the lifetime of the said grantors" and hence ceased running with the land and became the mere personal covenants of the grantors which cannot now be specifically enforced against the defendants.

The court further held and decreed that the defendant, Robert T. Willis, should not be allowed to benefit from the breach of the covenants, and that accordingly he could not maintain his action at law against the plaintiff for damages for the loss of his stock which had gone onto the railroad from the defendants' land, but was entitled to maintain his action for loss of stock which had gone onto the railroad from the lands of others.

In its assignments of error the plaintiff contends that it is entitled to specific performance of the covenants against the defendants because, it says, the covenants run with the land and obligate both the original grantors and their remote vendees, including the defendants, to build such fences; that there is no showing that the covenants were broken during the possession of any of the defendants' predecessors in title and became mere personal covenants of such grantors which cannot now be specifically enforced against the defendants; and that by reason of the failure of the defendants to perform the covenants the action at law against the plaintiff to recover damages for the loss of stock should be enjoined.

In their assignments of cross-error the defendants contend that the lower court erred in not decreeing that the plaintiff's right to

relief is barred by the ten-year statute of limitations; that the plaintiff's claim has been barred by laches, waiver and estoppel; and that under the circumstances the plaintiff was required by the provisions of Code, § 56-429, to fence its right of way to prevent the defendants' stock from going thereon.

The underlying facts are not in dispute. By deed dated November 24, 1855, and duly recorded a few days later, Orlando Griffith and wife conveyed to the Central Railroad Company some sixteen acres of land in Alleghany and Bath counties. In addition to the usual covenants the deed contained these provisions:

"And the said grantors in consideration of the sum aforesaid further agree that they are bound under their contract with the said company to fence the residue of the grantors' land up to the lines of the land herein conveyed and keep them thus fenced, so as to prevent cattle, horses, hogs, sheep from and off the company's tract, and that if the stock of the grantors or their heirs, devisees or vendees, wander upon the company's tract, and are killed for the want of sufficient fencing to keep the stock of the said grantors, their heirs, devisees or vendees off said track, that they the said grantors or those claiming under them, will not hold the said company responsible for damages for the value of the stock so killed or destroyed, etc.— and they do hereby covenant and agree, to and with the said company, that they and their heirs, etc., and vendees, will now and at all times hereafter faithfully perform the covenant last aforesaid."

By deed dated March 4, 1857, and duly recorded a few months later, Joshua Griffith and wife conveyed to Virginia Central Railroad Company a tract of about three acres of land in Bath county. In addition to the usual covenants the deed contained these provisions:

"And the said grantors in consideration of the sum aforesaid further agree that they are bound under their contract with the said company to fence up and keep fenced up to the lines of the lands herein conveyed the residue of grantors' lands, so as to keep grantors' stock from strolling upon the company's road. And that if grantors' or stock of those hereafter claiming under them, should be killed or damaged by company's engines in consequence of their stock coming upon the track, through the insufficiency of the fencing or for want of fencing, that grantors or those claiming under them will not hold the company responsible for the damages done in consequence of the want of sufficient fencing, etc. And they do

hereby covenant and agree to and with the said company that they and their heirs, etc., and vendees will now, and at all times hereafter, faithfully perform the covenants last aforesaid."

By deed dated March 4, 1857, and duly recorded a few months later, Adam Linkswiler and wife conveyed to Virginia Central Railroad Company about two acres of land in Bath county. In addition to the usual covenants the deed contained these provisions:

"And in consideration of the sum aforesaid, the grantors covenant and agree to and with the Virginia Central R. R. Company that they will fence up the residue of their lands up to the lines of the lands herein conveyed, and that they and their heirs, devisees or vendees will keep up the fencing as aforesaid, and that if from the failure to put up, or to keep up the fencing as aforesaid, their stock or the stock of those hereafter claiming under them should become injured or destroyed by the company's engines, that the said grantors, their heirs, devisees or vendees shall not and will not hold the company responsible for damages occasioned by the injury or destruction of any stock killed or injured on the line of the company's road."

By mesne conveyances the plaintiff traced its title and that of the defendants to these same grantors. The evidence shows without dispute that none of the grantors or their successive vendees constructed these fences. Nor did the Chesapeake & Ohio Railway Company, or its predecessors in title, make any demand upon the owners of the properties that they do so until 1952. In that year when the defendant, Willis, made claim upon the plaintiff for damages for stock which had been killed on the railroad, the plaintiff demanded that he fence his land bordering on the railroad in accordance with the covenants in the deeds. Upon advice of counsel, Willis refused to erect the required fences and instituted an action at law against the plaintiff for damages for the loss of his stock. Whereupon the present suit was brought.

It is generally held that a covenant to build or maintain a fence of a specified character between the lands of the covenantor and convenantee is a covenant which runs with the land and becomes obligatory upon subsequent purchasers who have constructive notice thereof by the recordation of the instrument in which the covenant is embodied. See 14 Am. Jur., Covenants, *etc.*, § 31, p. 508. Quite pertinent to the present case is this statement in 44 Am. Jur., Railroads, § 157, p. 372: "[W]here a strip of land through a farm is conveyed by the owner by deed, he convenanting to fence the track

through his land, the covenant gives to the company an interest in the nature of an easement in the grantor's adjoining land and runs with that land, and is absolute and does not depend on whether such fences are necessary or expedient." See also, Elliott on Railroads, 3d Ed., Vol. 3, § 1703, p. 639. For a collection of cases on the subject see, Annotation: 41 A. L. R. 1367; 102 A. L. R. 782; 15 Ann. Cas. 57.

However, there are a few cases which take the view that such covenants are purely personal in nature and therefore not binding on successors in interest. The leading case supporting this view is *Brown* v. *Southern Pacific Co.*, 36 Or. 128, 58 P. 1104, 47 L. R. A. 409, 78 Am. St. Rep. 761.

It is equally well settled that a covenant of the nature of a covenant running with land, when broken ceases to pass with the land and becomes a mere personal covenant or chose in action. See Minor on Real Property, 2d Ed., Vol. 1, § 408, p. 547; 14 Am. Jur., Covenants, *etc.*, § 40, p. 514; 21 C. J. S., Covenants, § 74, p. 933.

Whether the covenants here involved, although of the nature of covenants running with the land, are binding on the defendants depends upon whether they were broken by their predecessors in title, or one of them.

It will be observed that there is no limitation on the time within which the covenants are to be performed. Hence, they should have been performed within a reasonable time. 21 C. J. S., Covenants, § 93, p. 949. In *King* v. *Hudson River Realty Co.*, 210 N. Y. 467, 104 N. E. 926, it was held that a covenant requiring the vendor to install sidwalks and other improvements contemplated that it should be performed within a reasonable time.

What is a reasonable time within the contemplation of the parties depends upon the circumstances and the purposes for which the covenants were designed. In the present case the stated purpose requiring the grantors to erect and maintain the fences was to prevent their cattle from going onto the railroad track where they might be killed, with the result that claims therefor might be asserted against the grantee company. It is clear, then, that the parties intended that these covenans should be performed within a reasonable time after the railroad had been constructed and put into operation along the right of way which the grantors had conveyed to the Virginia Central Railroad Company.

The record  does not disclose just when this event occurred, but

it must have been prior to January 15, 1870, for it appears that on that date the plaintiff's predecessors in title conveyed to William Butler Duncan and others, trustees, its entire railroad line described as running from Richmond, Virginia, to a point in West Virginia. Certainly, then, the grantors or their successors in title[1] were under the obligation to erect these fences within a reasonable time from that date. The pivotal question is whether there was a breach of this obligation with the result that the covenants no longer ran with the land and ceased to be binding on the subsequent owners of the property.

The plaintiff insists that there is no showing of a breach of such covenants by any of the defendants' predecessors in title because, it says, these covenants were not broken by mere failure of the prior owners of the property to erect the fences, but were breached only when it called upon Willis to perform the covenants and he refused to do so, in 1952.

To support its contention the plaintiff relies upon the principle that an easement which has been created by a grant is not extinguished by a mere nonuser. I Minor on Real Property, 2d Ed., Vol. 1, § 109, pp. 148, 149, and cases there cited. But we are not here concerned with a nonuser of an easement. Our concern is whether the showing of a demand by the covenantee and a refusal by the covenantor to perform an affirmative covenant running with the land is necessary to establish a breach of such a covenant.

In *Louisville & Nashville R. R. Co.* v. *Pierce*, 313 Ky. 189, 230 S. W. 2d 430, 17 A. L. R. 2d 1244, there is dictum which sustains the plaintiff's view that such demand and refusal are necessary to established a breach of covenant. There the railroad company, in a deed by which it acquired a right of way, covenanted with the grantor to erect certain cattle passways across its tracks. After deciding the case on other grounds, the court held that the railroad company's obligation to the grantor, by virtue of the affirmative covenant, was not barred by the statute of limitations because, it said, the covenant was not breached until there had been a demand upon and a refusal by the company to perform the covenant. See also, Annotation: 17 A. L. R. 2d 1252.

We need not stop to inquire whether the principle stated in the *Pierce* case will be adopted and applied by us in a proper case. There

---

1 The record shows that the original grantors conveyed their interests in these lands bordering on the right of way of the railroad in 1857.

are compelling reasons why it should not be applied here. In *White-hurst v. Duffy*, 181 Va. 637, 643, 26 S. E. 2d 101, 103, we pointed out that the principle that a cause of action does not accrue until demand has been made, is subject to the well-recognized exception that where the only act necessary to perfect the plaintiff's cause of action is one to be performed by the plaintiff and he is under no restraint or disability, he cannot indefinitely suspend the statute of limitations by delaying the performance of that act. This is based upon the principle that it is not the policy of the law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another. See also, 34 Am. Jur., Limitation of Actions, § 116, p. 96; Williston on Contracts, Rev. Ed., Vol. 6 § 2041, pp. 5718, 5719; 54 C. J. S., Limitations of Actions, § 200, p. 205.

The claim of the plaintiff does not appeal to equity and good conscience. It is here asking for specific performance of what it says is an obligation placed upon the defendants by covenants in deeds which the defendants' predecessors in title had executed nearly 100 years ago. During that extended period the plaintiff slept on its rights. It takes the position that although at any time it could have accrued its cause of action against the prior owners of the property by a demand that they forthwith perform the covenants relied on, because it elected not to do so its right to require performance continued. Clearly, it would be inequitable and unjust to sustain that position here. Equity aids the vigilant, not those who sleep on their rights.

We hold that under the circumstances of this case the failure of the defendants' predecessors in title to erect these fences within a reasonable time after the railroad had been constructed and put into operation along the right of way which the grantors had conveyed to the plaintiff's predecessor in title constituted a breach of the covenants which thereafter no longer ran with the land, but became the mere personal covenants of those who had breached them and subject to the defense of the statute of limitations. 14 Am. Jur., Covenants, etc., § 37, p. 513.

Such personal covenants were subject to the ten-year statute of limitations for actions on a sealed instrument (Code, § 8-13) and have long since been barred and are not enforceable against the defendants.

Specific performance of a contract is not a matter of right, but

rests in a sound judicial discretion, governed by the circumstances and equities of the case. 17 Mich. Jur., Specific Performance, § 4, p. 8 *ff.* The circumstances and equities here fully warranted the action of the lower court in denying specific performance.

The covenants having been barred by the statute of limitations were extinguished *in toto* and are inoperative as a limitation on the right of the defendant, Robert T. Willis, to maintain his action at law against the plaintiff for damages for his stock killed on the railroad track. The rights of the parties are now controlled by Code, § 56-429 *ff.*, which require the plaintiff Railway Company to erect and maintain lawful fences along its roadbed.

The decree appealed from will be modified by the elimination of the provision that the defendant, Robert T. Willis, may not maintain his action at law against the plaintiff for damages for loss of his stock which went upon the track of the plaintiff "immediately or directly from the lands of the defendants or that of either of them which abuts or adjoins" the plaintiff's right of way. With this modification the decree is affirmed.

*Modified and affirmed.*