Present:  All the Justices

SONOMA DEVELOPMENT, INC.

v.  Record No. 982098  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        June 11, 1999
GIRARD C. MILLER, ET AL.


              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge


        In a decree dated July 29, 1998, the circuit court

upheld the validity of a "Declaration of Restriction" and

ordered Sonoma Development, Inc. (Sonoma), to remove all

improvements that were within three feet of the north wall

of a residence owned by Girard C. Miller and Lynn E. Miller

(the Millers).  In granting the Millers' motion for summary

judgment, the circuit court stated that "there was a valid

declaration of restriction on the property recorded, that

there was privity between the original parties, that it was

the intent and, in fact, actually said in the restriction

itself that it was to run with the land.  And certainly, it

does touch and concern the land."

        This appeal concerns the circuit court's finding that

horizontal privity existed between the original covenanting

parties.  Because the "Declaration of Restriction" was part

of a transaction that included a transfer of an interest in

the land to be benefited by the restrictive covenant, we will affirm the judgment of the circuit court.

Prior to the incident that prompted the present litigation, Alfred E. Schaer and Mary Schaer (the Schaers) owned two adjacent lots, numbered Lot 38 and Lot 39, in the area commonly known as "Old Town" in the City of Alexandria. Facing the lots from the street on which they are situated, Lot 38 lies to the left of Lot 39. The lots are long and narrow, and share a common sideline that runs from the front to the back of the lots.

When the Schaers owned both lots, a three-story, brick house was situated on Lot 38, but Lot 39 was vacant. The north wall of the house on Lot 38 physically encroaches upon the southern boundary line of Lot 39 by 0.1 foot at the northeast corner of the dwelling and by 0.2 foot at the northwest corner of the dwelling.

In 1995, the Millers entered into a real estate contract with the Schaers for the purchase of Lot 38. Because the Millers were concerned about future development on Lot 39, the contract included a provision requiring the Schaers to provide a deed restriction on Lot 39 prohibiting the use of a common wall with Lot 38 and requiring a sufficient easement to facilitate maintenance of the portion of the dwelling that encroaches on Lot 39. On June

2

30, 1995, in furtherance of their obligations under the contract, the Schaers executed a "Declaration of Restriction" requiring "[t]hat no improvement of any kind be constructed upon Lot 39 within three (3) feet of the north wall of the existing dwelling on Lot 38." Although the Schaers were designated as the "Grantor" in the declaration, the document did not name any entity or individual as the "Grantee."

On the same day, the Schaers executed a "Declaration of Easement" in which they granted an easement on Lot 39 "for the benefit of lot 38 to permit the house to remain in its present position . . . and to permit ingress and egress unto lot 39 as reasonably necessary to repair and maintain the northern wall of the house." Like the "Declaration of Restriction," the "Declaration of Easement" named the Schaers as the "Grantors" but did not specify anyone as the "Grantee." The "Declaration of Easement" did, however, state that the Schaers had agreed to sell Lot 38 to the Millers. In addition, both documents were recorded in the clerk's office of the circuit court.

Also on June 30, 1995, the Schaers executed a deed conveying Lot 38 to the Millers. The deed states that the "conveyance is made subject to recorded conditions,

restrictions and easements affecting the property hereby conveyed."

In February 1997, Sonoma purchased Lot 39 from the Schaers.  The deed from the Schaers to Sonoma, dated February 21, 1997, specifies that the conveyance is "subject to easements, restrictive covenants, restrictions and rights-of-way of record."[1]

In the spring of 1997, Sonoma contracted with Mitchell, Horn & Associates, Inc., for the construction of a house on Lot 39.  The Millers commenced this action because the house that was constructed on Lot 39 violates the three-foot setback requirement contained in the "Declaration of Restriction."  According to a plat of Lot 39, the dwelling on that lot is situated between 2.5 and 2.6 feet away from the north wall of the house on Lot 38.

In Virginia, we recognize two types of restrictive covenants:  "the common law doctrine of covenants running with the land and restrictive covenants in equity known as equitable easements and equitable servitudes."  Sloan v. Johnson, 254 Va. 271, 274-75, 491 S.E.2d 725, 727 (1997);

---

[1] First American Title Insurance Company issued a title insurance policy to Sonoma on February 26, 1997.  The policy lists the "Restrictive Covenants" and "Declaration of Easement" as items that are excluded from coverage under the policy.

accord Mid-State Equip. Co., Inc. v. Bell, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976). In the present case, the Millers acknowledge that the "Declaration of Restriction" does not fall within the second category of restrictive covenants. Thus, the issue is whether that document creates a valid common law restrictive covenant that runs with the land, frequently referred to as a "real covenant."[2]

To enforce a real covenant in Virginia, a party must prove the following elements: (1) privity between the original parties to the covenant (horizontal privity);[3] (2) privity between the original parties and their successors in interest (vertical privity); (3) an intent by the original covenanting parties that the benefits and burdens of the covenant will run with the land; (4) that the

---

[2] Covenants affecting the use of land that run to the benefit or burden of remote successors in interest to the land came to be called "real covenants." 9 Richard R. Powell and Patrick J. Rohan, Powell on Real Property § 60.01[2] (1999).

[3] A number of jurisdictions have abolished the requirement of horizontal privity. 7 Thompson on Real Property § 61.04(a)(3) (David A. Thomas ed., 1994); 9 Powell on Real Property § 60.11[3]. The Restatement (Third) of Property: Servitudes § 2.4 (Tentative Draft No. 1, 1989), states that horizontal privity between the parties is not required to create a servitude. See Moseley v. Bishop, 470 N.E.2d 773, 778 n. 1 (Ind. Ct. App. 1984) for a discussion regarding the status of the horizontal privity requirement.

covenant "touches and concerns" the land; and (5) the covenant must be in writing. Sloan, 254 Va. at 276, 491 S.E.2d at 728. Sonoma contends that the element of horizontal privity is absent in this case. It argues that horizontal privity did not exist between the original covenanting parties, the Schaers and the Millers, because only the Schaers were named as a party in the "Declaration of Restriction." In other words, Sonoma posits that horizontal privity must be demonstrated within the four corners of a single document.

In two of this Court's recent cases upon which Sonoma relies, we did, indeed, include horizontal privity as one of the elements of a covenant running with the land. Waynesboro Village, L.L.C. v. BMC Properties, 255 Va. 75, 81, 496 S.E.2d 64, 68 (1998); Sloan, 254 Va. at 276, 491 S.E.2d at 728. However, because the real covenants at issue in those cases were contained in deeds between named grantors and grantees, we did not focus on the essential components of horizontal privity. Waynesboro Village, 255 Va. at 78, 496 S.E.2d at 66; Sloan, 254 Va. at 277, 491 S.E.2d at 728-29. Thus, in Waynsboro Village and Sloan, we did not resolve the issue that is currently before us.

With regard to the precise issue presented in this appeal, we conclude that horizontal privity did exist

between the Schaers and the Millers. We are not willing to say that, in every situation, only one document can be examined in order to determine if horizontal privity existed between the original covenanting parties. See Cook v. Tide Water Associated Oil Co., 281 S.W.2d 415, 419 (Mo. Ct. App. 1955) (upholding restrictive covenant that was entered into prior to deed); Leighton v. Leonard, 589 P.2d 279, 281 (Wash. Ct. App. 1978) (upholding restrictive covenant created in agreement after deed conveying real estate was executed).

In order to establish horizontal privity, the party seeking to enforce the real covenant must prove that "the original covenanting parties [made] their covenant in connection with the conveyance of an estate in land from one of the parties to the other." Runyon v. Paley, 416 S.E.2d 177, 184 (N.C. 1992); accord 7 Thompson On Real Property § 61.04(a)(2). The Restatement of Property § 534(a) (1944), provides that horizontal privity is satisfied when "the transaction of which the promise is a part includes a transfer of an interest either in the land benefited by or in the land burdened by the performance of the promise." [4] In other words, the covenant must be part

---

[4] The Restatement's comment on clause (a) states that "[a] transfer of an interest in land as a part of a

7

of a transaction that also includes the transfer of an interest in land that is either benefited or burdened by the covenant.  Johnson v. Myers, 172 S.E.2d 421, 423 (Ga. 1970); Moseley, 470 N.E.2d at 778; Runyon, 416 S.E.2d at 184-85; Bremmeyer Excavating, Inc. v. McKenna, 721 P.2d 567, 569 (Wash. Ct. App. 1986).

The term "transaction" is defined as "an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered."  Black's Law Dictionary 1496 (6th ed. 1990); cf. Virginia Housing Dev. Auth. v. Fox Run Ltd. Partnership, 255 Va. 356, 364-65, 497 S.E.2d 747, 752 (1998) (quoting Richmond Postal Credit Union v. Booker, 170 Va. 129, 134, 195 S.E. 663, 665 (1938)) ("'[N]otes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract.'").  In the context of the present case, we find that the transaction of which the covenant was a part commenced with the real estate contract between the Schaers and the Millers, and culminated with

_____

transaction in which a promise respecting the use of land is made is sufficient to create the relationship essential to the running of the burden of the promise."

8

the deed conveying Lot 38 to the Millers.  The "Declaration of Restriction" fulfilled the Schaers' contractual obligation to establish a restriction on Lot 39, which lot was being retained by the Schaers at that time, and was executed in conjunction with the deed to the Millers.  Thus, it was part of a transaction that included the transfer of an interest in the land benefited by the real covenant.[5]

Sonoma also assigns error to the circuit court's award of injunctive relief without receiving evidence with regard to an appropriate remedy in equity.  Sonoma contends that the facts necessary to determine the remedy remained in dispute and that summary judgment was, therefore, not warranted.  We find no merit in this argument.

Sonoma does not dispute that it had notice of the "Declaration of Restriction."  Indeed, it was in Sonoma's chain of title and was specifically excluded from coverage in its title insurance policy.

> If parties, for valuable consideration, with their
> eyes open, contract that a particular thing shall not
> be done, all that a court of equity has to do is to
> say by way of injunction that which the parties have
> already said by way of covenant--that the thing shall
> not be done; and in such case the injunction does

---

[5] Sonoma does not dispute the validity of the "Declaration of Easement" even though the Schaers were the only parties named in that document.  Yet, it is part of the same transaction as the "Declaration of Restriction."

9

> nothing more than give the sanction of the process of the court to that which already is the contract between the parties.  It is not, then, a question of convenience or inconvenience, or of the amount of damage or injury.  It is the specific performance, by the court, of that negative bargain which the parties have made, with their eyes open, between themselves.

Spilling v. Hutcheson, 111 Va. 179, 182, 68 S.E. 250, 251 (1910).  We further stated in Lindsay v. James, 188 Va. 646, 661, 51 S.E.2d 326, 333 (1949), that "[r]elief by way of a mandatory injunction will not be denied merely because the loss caused will be disproportionate to the benefits accruing to the opposing party where it appears that the obstruction or the violation of a right was made with full knowledge and understanding of the consequences which result."  See also Marks v. Wingfield, 229 Va. 573, 577, 331 S.E.2d 463, 465 (1985) (remanding to trial court for entry of injunction to enforce restrictive covenant).

Thus, we find no reason why the circuit court needed to hear additional evidence on this issue.  An injunction was the appropriate remedy to enforce the terms of the "Declaration of Restriction."

For the reasons stated, we will affirm the judgment of the circuit court.

Affirmed.