298

## CIRCUIT COURT OF THE CITY OF RICHMOND

Jonathan Perel,
Trustee for the
Ballyshannon Trust,
and River Locke Lot, L.L.C.

v.

Scott Brannan,
Melissa Brannan,
Locke Lane, L.C.,
River Locke Homeowners'
Association, Inc.,
Stuart C. Siegel,
Fernand Baruch, Jr.,
and Sidney J. Gunst, Jr.

March 7, 2003

Case No. HQ-1833-3

BY JUDGE T. J. MARKOW

The parties, in person and by counsel, came for trial on the issue joined; evidence was presented; and argument was heard.

The plaintiff, Jonathan Perel, complains that the defendants Scott and Melissa Brannan violated certain subdivision covenants relating to the development called River Locke. As a party to the covenants, Perel has standing to complain of violations. He asks the court to declare violations, to order the Brannans to correct the violations, and to order the defendant Locke Lane, L.C., the developer, to join the Brannans to correct the violations. Plaintiff also requests an award of attorney's fees.

The Brannans and Locke Lane, L.C., ask that the work be deemed in conformity with the covenants and that they be awarded their attorney's fees.

The Brannans are the owners of Lot 1 in the River Locke subdivision. The subdivision adjoins property owned by Perel. He also owns Lot 4 in the subdivision. Perel and the developer entered into an agreement binding the developer to include certain restrictions on the development, to assure Perel's involvement in the development and execution of the restrictive covenants called the *Amended and Restated Declaration of Rights, Restrictions, Affirmative Obligations, and Conditions Applicable to All Property in River Locke.* (Hereafter referred to as the "covenants" or "Declarations.")

These covenants were recorded and run with the land.

The Brannans purchased Lot 1 and constructed a house on it. This dispute involves their removal of some trees and other vegetation and construction and excavation within the setback lines and buffer area.

Lot 1, a one-acre lot, had a relatively small area on which a house could be built. Because of the lot's steep drop-off near the front of the lot, as well as the presence of a large rock formation in the middle of the Lot, the planner sited the home in the southeast quadrant of the lot near the rear and side setback lines. The property on the other side of these lines is owned by Perel.

Each lot is burdened with fifty-foot rear yard and ten-foot side yard setback buffer lines, the buffer area being a width of twenty-five feet along the rear and fifteen feet along the side yard property lines.

The declarations restrict building, excavation, clearing, etc., within the setback and buffer areas. These restrictions on buffer areas are somewhat different from those of the setback areas.

Lot 1 generally slopes rather steeply downward from the rear of the lot toward the front. Along the rear property line, the lot was significantly higher than but close to the site selected for the house. That high ground was within the rear buffer and setback lines.

A patio was planned to be built between the house and the rear property lines within the setback lines. To accommodate that feature, it was necessary that the Brannans excavate the hill behind the house, cutting into it a depth of ten feet to fourteen feet. The entire excavation was within the setback and buffer areas. The excavation also required the removal of vegetation including eight large trees from the buffer area.

Perel claims that the excavation and the tree removal violate the covenants and the violations require remediation.

All construction in the subdivision must be approved by the Architectural Review Committee as provided in the covenants. That Committee approved the Brannan's work. The Brannans contend that such approval is dispositive of the issues raised by Perel. Perel argues that the

approval was itself a violation of the declaration and asks that both the Brannans and the developer be held responsible for remediation.

## Removal of the Trees

In responses to Requests for Admissions, the Brannans conceded that eight very large trees were removed from the buffer area. The Brannans also removed smaller trees and underbrush from the buffer area.

The covenants provide "all existing vegetation and trees within the buffer areas shall be preserved. . . ." See Declarations, Part V, § I(c)(i).

The purpose of the buffer area was to leave existing vegetation so as to provide a sight barrier between homes in River Locke and Perel's property. Brannan's removal of these very large trees did not affect this purpose as the crowns of these trees were much higher than any sight lines between these properties. Nevertheless, the court finds that the Brannans violated this section of the covenants by removing the trees.

Any remedy fashioned by the court in this case must be based on evidence. That remedy must put the plaintiff in the position he was before the violation and must be enforceable. In *Sonoma Development* v. *Miller*, 258 Va. 163, 515 S.E.2d 577 (1999), the Supreme Court upheld the trial court's decision that evidence did not have to be presented for it to order the removal of a structure within a prohibited area. Here, however, what plaintiff asks the court to order is the replacement of eight huge trees. While it is common knowledge that small trees and vegetation can be successfully transplanted, the same cannot be said for the transplantation of very large trees. There is no evidence that the court could order that the eight large trees be successfully replaced. Of course, with enough money, almost anything can be done. Here the court could order that eight large trees be removed from another site, moved to the buffer area, and planted. There is no answer, however, whether they are likely survive and, if so, for how long? Such an order could well result in career-long litigation as there is no evidence regarding feasibility.

There is sufficient evidence to order replacement of the smaller trees and bushes to compare with the vegetation adjoining Lot 1. That will be ordered.

## The Excavation and the Retaining Wall

Perel argues that the Brannans also violated the covenants by cutting the natural grade in the setback and buffer areas by from ten feet to fourteen feet, and they constructed a retaining wall and patio in the space prepared by

the excavation. He relies on Declarations, Part V, § 1(c)(i), (ii), which provide in pertinent part:

> (1)(c). No buildings, structures, or other improvements . . . as approved by the Architectural Review Committee may be . . . constructed or erected within any buffer area or rear building setback area . . . except as follows:
>
> (i) *Buffer Areas* — Within the buffer areas on the restricted Lots, no buildings or other improvements may be . . . constructed . . . except that privacy fences or walls . . . may be constructed therein. Notwithstanding anything in § 1 of Part II to the contrary, all existing vegetation and trees within buffer areas shall be preserved. . . .
>
> (ii) *Rear and Side Setback Areas* — Within the portion of the rear and side setback areas outside of the buffer areas on the Restricted Lots, clearing, at grade patios and walkways are permitted. . . .

The Brannans excavated into both the buffer and side and rear setback areas, installed a retaining wall to prevent the excavation from collapsing and constructed a below grade patio, all with the approval of the Architectural Review Committee. It is clear that the construction of the below grade patio is a violation of the cited covenants. The excavation is permitted, however, (except the removal of the trees previously discussed) under Part II, § 1, of the Declaration which provide:

> Topographic and vegetation characteristics of Properties within River Locke shall, to the *maximum extent practical*, consistent with the erection of residences on each Property . . . not be significantly altered by removal, reduction, cutting, excavation or any other means *except as required to construct approved improvements* on the Property.

(Emphasis added.)

The Brannans determined that the cut in grade and the construction of the retaining wall were necessary to the construction of their residence and that plan was approved by the Architectural Review Committee. Such interpretation of the declarations are delegated to the Committee in Declarations, Part I, § 9. The interpretation necessary was whether the excavation was "required to construct approved improvements," and whether

§§ (c)(i) and (ii) of Part V of the Declarations preclude the excavations permitted in Part I, § 9, of the Declarations.

Plaintiff's argument that Part I, § 9(b), forbids the Committee from such decision is incorrect. This section forbids waivers of the prohibition found in Part V, §§ (c)(i) and (ii). The Committee did not waive compliance. It interpreted these sections along with Part II, § 1, to permit the excavations. This is within the authority of the Committee.

Declarations such as those here are contractual agreements and are to be construed and enforced as such. Nothing prohibits parties from delegating to non-judicial entities the responsibility of interpreting their contract. As interpretation was delegated here, the court will uphold that agreement.

While the Architectural Review Committee has the authority to "interpret," the Declarations, it has no authority to permit a clear violation. An illustration of the distinction is presented in this case.

An interpretation of the Declaration is necessary to determine the relationship between Part II, § 1, and Part V, §§ (c)(i) and (ii), of the Declarations as regards excavation. No interpretation is required to determine that the construction of the below-grade patio within the setback or buffer areas as that is clearly prohibited.

The Committee, however, had no authority to approve the plan allowing the below-grade patio to be constructed within the rear setback area as that is prohibited in Part V, § (c)(ii), of the covenants.

The retaining wall was a necessary adjunct to the permitted excavation to prevent the collapse of the soil and rock which remained after the cut was complete. Parenthetically, should the excavation have been determined to violate the covenants, there is no evidence on which the court could prepare an enforceable order that the excavated area be returned to its pre-excavation state. For examples: What was the original grade and slope? What degree of compaction is necessary? What type of soil, clay, or rock needs to be used?, etc.

As its construction is a clear violation of the covenants, the patio must be removed notwithstanding the fact that it is totally shielded from sight from the Perel property. Its removal is easily measurable and enforceable.

It is, therefore, ordered and declared that:

1. The Brannan's removal of the eight trees and other vegetation from the buffer area is a violation of the covenants.

2. The Brannan's construction of the below grade patio within the rear setback area is a violation of the covenants.

3. The Brannan's excavation of ten feet to fourteen feet within the rear and side setback and buffer areas and the construction of the retaining wall is permitted by the covenants.

4. The Brannan's construction of the below grade patio violates the covenants.

5. Each party requests an award of attorney's fees. Each one has prevailed to some extent. Neither has presented evidence regarding the amount and reasonableness of attorney's fees. As the evidence was closed at the end of trial, the court has no basis for an award of attorney's fees to any party.

6. The Brannans are ordered to replace the vegetation (except the eight large trees) that was cleared in the area of the buffer so that it is comparable in quantity and quality to vegetation in the area adjoining the rear and side lot lines of Lot 1 of the River Locke subdivision.

7. The Brannans are ordered to remove the patio and any other improvements in the setback area.

8. The bill of complaint as to the remaining defendants is dismissed.

9. The defenses of "unclean hands" and laches or estoppel are without merit.

10. The Clerk is ordered to place this file among the ended causes.