PRESENT: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Russell, S.J.

NORFOLK SOUTHERN RAILWAY COMPANY

OPINION BY
JUSTICE ELIZABETH A. McCLANAHAN
v.    Record No. 131066
APRIL 17, 2014

E. A. BREEDEN, INC.

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

Norfolk Southern Railway Company (Norfolk Southern) appeals from the judgment of the circuit court granting permanent injunctive relief to E. A. Breeden, Inc. (Breeden) requiring Norfolk Southern to restore a private grade crossing over its railway tracks in Rockingham County. We will affirm the judgment of the circuit court.

I.    BACKGROUND

The current action involves a private grade crossing across Norfolk Southern's railway tracks created pursuant to a crossing agreement dated March 26, 1940, and recorded in the circuit court clerk's office of Rockingham County (Crossing Agreement). The Crossing Agreement was entered into by the owners of the 156-acre T. L. Yancey estate (Yanceys) and Norfolk & Western Railway Company (Norfolk & Western), a predecessor to Norfolk Southern.

Pursuant to the Crossing Agreement, Norfolk & Western agreed to construct and maintain a new private grade crossing for use by the Yanceys in exchange for the Yanceys' agreement to

release their rights to the two then existing private crossings that were to be abandoned.[1]  The Crossing Agreement expressly "grant[ed] unto the [Yanceys] the right and privilege of a private grade crossing about 18 feet in width, over, upon and across the right of way and tracks of [Norfolk & Western]" and obligated Norfolk & Western "to construct and maintain the said crossing.".  The Crossing Agreement specifically provided:

> [The Yanceys] covenant and agree that the private crossing to be constructed hereunder shall be used solely in their own interest and for their own benefit, and that they will indemnify and save harmless the Railway Company from any and all claims for damage or injury to person, including death, or property, resulting from their use of said grade crossing.

In addition, the Crossing Agreement stated that it "shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto."

In 1996, Breeden acquired title to a 2.56 acre tract that was originally a part of the T. L. Yancey estate tract and, in 1999, leased a house and yard located upon this tract to Todd and Michelle Ditton.  In 2001, Todd Ditton was injured when his vehicle was struck by a Norfolk Southern train at the crossing.

---

[1] At the time the Crossing Agreement was entered into, the Yancey Estate was located on both sides of the railroad tracks and had access to a public road, now State Route 642, and U.S. Highway No. 12, now U.S. Route 340, located on the opposite side of the railroad tracks from State Route 642.

Ditton filed an action against Norfolk Southern and the parties settled the action in 2005.

In 2006, Norfolk Southern filed an action against Breeden seeking to recover the settlement amount as well as the costs and attorney's fees associated with the Ditton litigation based on the indemnity clause of the Crossing Agreement (indemnification litigation). The circuit court ruled that Norfolk Southern was not entitled to indemnification or contribution from Breeden. In reaching its decision, the circuit court ruled that the Crossing Agreement was a covenant running with the land, and that Ditton, as lessee of Breeden, was a successor to the Crossing Agreement and had a right to use the crossing.

The circuit court further ruled that Ditton's use of the crossing was not attributable to Breeden and, therefore, Breeden was not obligated under the Crossing Agreement to indemnify Norfolk Southern for the costs incurred and damages paid by Norfolk Southern arising from Ditton's use of the crossing. Norfolk Southern filed a petition for appeal with this Court, which petition was refused by an unpublished Order. See Norfolk Southern Railway Company v. E. A. Breeden, Inc., Record No. 080429 (June 13, 2008).

At some time subsequent to the conclusion of the indemnification litigation, Norfolk Southern removed the private

3

crossing. Breeden filed a complaint against Norfolk Southern seeking a permanent injunction requiring Norfolk Southern to replace and maintain the crossing. Breeden also sought compensatory and punitive damages alleging breach of contract, tortious interference with the right of way, and nuisance.

Norfolk Southern filed a demurrer to the complaint on the grounds that the prior rulings of the circuit court established, as a matter of law, that Breeden materially breached the Crossing Agreement and was not entitled to enforce it because Breeden permitted use by Ditton that was not solely in Breeden's interest and not solely for Breeden's benefit. Overruling the demurrer, the circuit court held that based on its previous rulings that Ditton was a successor in interest under the terms of the Crossing Agreement and his use of the crossing was independent of Breeden, it could not rule that Breeden materially breached the Crossing Agreement as a matter of law.[2]

Breeden filed a motion for summary judgment seeking a judgment that Norfolk Southern was obligated to maintain the crossing and an order requiring Norfolk Southern to replace the private crossing on the grounds that the circuit court's prior holdings were binding under principles of collateral estoppel.

---

[2] The circuit court sustained Norfolk Southern's demurrer to the claim for tortious interference and punitive damages.

4

Norfolk Southern opposed the motion for summary judgment on the grounds that there were genuine issues of material fact as to whether Breeden sustained actual injury or damages to recover on a breach of contract claim and that Breeden was not entitled to injunctive relief because it had not presented evidence of irreparable harm and lack of an adequate remedy at law. In addition, Norfolk Southern argued that Breeden's motion for summary judgment failed to address the affirmative defenses raised by Norfolk Southern, including estoppel, laches, unclean hands, and first material breach.

The circuit court denied Breeden's motion for summary judgment and held an evidentiary hearing on Breeden's request for permanent injunctive relief. Upon consideration of the evidence presented at the hearing and certain concessions made by Norfolk Southern, the circuit court granted the request for injunctive relief requiring Norfolk Southern to replace the crossing.

## II.   ANALYSIS

### A.   First Material Breach

Norfolk Southern argues that the circuit court erred in overruling the demurrer and enforcing the Crossing Agreement because Breeden committed the first material breach of the Crossing Agreement, thereby precluding Breeden from enforcing the agreement. See, e.g., Countryside Orthopaedics, P.C. v.

5

_Peyton_, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001); _Horton v. Horton_, 254 Va. 111, 115-16, 487 S.E.2d 200, 203-04 (1997).

We have not previously applied the doctrine of first material breach to vested property rights granted under a real covenant. Indeed, this doctrine is ill-suited to address situations in which the covenantor seeks to excuse its unilateral termination of real property interests held by other landowners. Nevertheless, the circuit court did not err in concluding there was no material breach by Breeden. In previously determining the enforceability of the indemnity clause of the Crossing Agreement in the indemnification litigation, the circuit court ruled that the Crossing Agreement is a valid covenant running with the land such that Breeden, as a successor to the Yanceys, was entitled to the use and benefits of the crossing.[3] Additionally, the circuit court ruled that Ditton, as Breeden's lessee, was a successor under the terms of

---

[3] Both parties asserted that the circuit court's prior rulings were binding in the current litigation under principles of collateral estoppel, and the circuit court agreed with these assertions. Neither party has assigned error to the circuit court's ruling in this case that it was bound by its previous rulings that the Crossing Agreement was a covenant running with the land and that Breeden and its lessee were successors under the Crossing Agreement. Therefore, we will not revisit those issues. See Rule 5:25 (no ruling of the trial court will be considered "as a basis for reversal" unless objection stated).

6

the Crossing Agreement and, therefore, had a legal right to utilize the crossing independent of whether Breeden permitted such use by Ditton. The circuit court further ruled that "Ditton's use of the crossing did not solely benefit [Breeden] but benefited Ditton independently." Since the Crossing Agreement expressly "grant[ed] unto the [Yanceys and their successors] the right and privilege" to use the crossing "solely in their own interest and for their own benefit," Ditton's use of the crossing for his own benefit was not a violation of the Crossing Agreement.

Notwithstanding Ditton's right under the Crossing Agreement to use the crossing as a successor for his own benefit, Norfolk Southern argues that Breeden breached the Crossing Agreement by allowing its lessee to use the crossing in a means that was not solely in Breeden's own interest or for Breeden's own benefit. Norfolk Southern's argument, however, has no merit because the Crossing Agreement did not prohibit the conveyance or lease of the property benefiting from the crossing and did not require that the use of the crossing be excluded from any conveyance or lease of the property benefiting from the crossing. To the contrary, the Crossing Agreement provided it was "binding upon the heirs, executors, administrators, successors and assigns of the parties hereto." Therefore, the Crossing Agreement did not obligate Breeden to preclude its lessee from using the crossing

7

for the lessee's benefit and Breeden cannot be deemed to have breached the Crossing Agreement in not preventing such use.[4]

B.   Injunctive Relief

Norfolk Southern also argues the circuit court erred in granting the injunction without requiring Breeden to prove harm and without balancing the equities.  "[T]he decision to grant or deny an injunction is within the discretion of the trial court, and it will not be disturbed on appeal unless it is plainly wrong."  Snead v. C&S Props. Holding Co., 279 Va. 607, 613, 692 S.E.2d 212, 215 (2010).

At the hearing, Breeden introduced evidence regarding its use of the crossing and safety concerns caused by the removal of the crossing due to the lack of ingress or egress during times of high water or flooding that blocked other access.  Although Norfolk Southern proffered evidence through cross-examination of Breeden's witness regarding the lease payments received by Breeden before and after the removal of the crossing and an appraisal obtained by Breeden estimating a diminution in value

---

[4] If Norfolk Southern believed that Breeden's action in leasing the property without placing restrictions on the use of the crossing increased the burden originally contemplated by the parties under the Crossing Agreement, its remedy was to seek equitable relief against Breeden, not to remove the crossing, thereby terminating the rights of all landowners that were parties to or successors under the agreement.

8

of $7,500 resulting from the removal of the crossing, the circuit court disallowed the evidence.

When Breeden began to introduce evidence relevant to whether it had acquiesced in the removal of the crossing or whether it was guilty of laches in failing to object to the removal of the crossing, Norfolk Southern conceded it was not contesting those issues. In fact, Norfolk Southern did not bring witnesses to the hearing. Norfolk Southern argued it was defending the request for an injunction on the grounds that Breeden had not suffered any injury, that any harm was outweighed by the burden to Norfolk Southern if the crossing is installed, and that Breeden had an adequate remedy at law. In light of those concessions, the circuit court determined no further evidence from Breeden was necessary. The circuit court ruled that the Crossing Agreement was specifically enforceable and that it would order Norfolk Southern to reinstall the crossing.[5]

We have previously held that an injunction is the appropriate remedy for enforcement of a real property right. See, e.g., Snead, 279 Va. at 608, 616, 692 S.E.2d at 212, 216;

_____

[5] Acting on Breeden's representation that it would no longer seek damages on its claim for breach of contract, the circuit court ordered the removal of the scheduled trial from its docket.

9

Pizzarelle v. Dempsey, 259 Va. 521, 532, 526 S.E.2d 260, 266 (2000); Sonoma Development, Inc. v. Miller, 258 Va. 163, 169-70, 515 S.E.2d 577, 580-81 (1999); Boerner v. McCallister, 197 Va. 169, 172, 89 S.E.2d 23, 25 (1955). This is so because the violation of a real property interest is deemed "'irreparable and the owner protected in the enjoyment of his property whether such be sentimental or pecuniary.'" Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 62, 662 S.E.2d 44, 54 (2008) (quoting Boerner, 197 Va. at 172, 89 S.E.2d at 25)).[6] In such a case, we have noted "that the question was not one of reasonableness, nor was it a case in which the equities should be balanced." Snead, 279 Va. at 615, 692 S.E.2d at 216.

We have also recognized that a party seeking to enforce a real covenant is generally entitled to the equitable remedy requested upon showing the validity of the covenant and its breach. Perel v. Brannan, 267 Va. 691, 700, 594 S.E.2d 899, 904 (2004). See, e.g., Sonoma Development, 258 Va. at 169-70, 515 S.E.2d at 580-81 (evidence with regard to an appropriate remedy in equity is unnecessary where a restrictive covenant was valid and the breaching party had notice of the covenant); Marks v.

---

[6] In recognizing that an injury to a real property right is deemed irreparable, we contrasted injunctions sought to enforce a contract right concerning personal property from injunctions sought to enforce a real property right. Levisa Coal, 276 Va. at 61-62, 662 S.E.2d at 53-54.

10

Wingfield, 229 Va. 573, 577, 331 S.E.2d 463, 465 (1985) (trial court erred in denying injunction to enforce restrictive covenant where restrictions were reasonable and enforceable); Spilling v. Hutcheson, 111 Va. 179, 183, 68 S.E. 250, 252 (1910) ("The injunction in this case is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial.").

A defendant may avoid the imposition of the equitable remedy sought for violation of a real covenant "if such a remedy would create a hardship or injustice that is out of proportion to the relief sought, if performance by the defendant would be impossible, or if the enforcement of the decree would be unusually difficult for the court." Perel, 267 Va. at 700, 594 S.E.2d at 904-05 (footnotes omitted). "However, on the questions of hardship, injustice, or impossibility, the defendant bears the burden of providing the elements of the defense." Id. at 700, 594 S.E.2d at 905. Nevertheless, "[t]he doctrine of 'balancing of equities' must be viewed in light of our long-standing pronouncement that a private landowner is to be protected for injuries he may sustain 'even though inflicted by forces which constitute factors in our material development and growth.'" Blue Ridge Poultry & Egg Co. v. Clark, 211 Va. 139, 144, 176 S.E.2d 323, 327 (1970) (quoting Townsend v.

11

Norfolk Ry. & Light Co., 105 Va. 22, 49, 52 S.E. 970, 979 (1906)).

Based on the rulings of the circuit court in the indemnification litigation, Breeden was the successor in interest to the Crossing Agreement, a valid covenant running with the land, under which Norfolk Southern was obligated to construct and maintain the private grade crossing.  It is undisputed that Norfolk Southern had notice of the covenant and removed the crossing to which Breeden was granted "the right and privilege."  Therefore, Breeden was entitled to an injunction requiring the replacement of the crossing unless Norfolk Southern proved "such a remedy would create a hardship or injustice that is out of proportion to the relief sought, if performance by the defendant would be impossible, or if the enforcement of the decree would be unusually difficult for the court."  Perel, 267 Va. at 700, 594 S.E.2d at 904-05 (footnotes omitted).

Breeden presented evidence regarding its use of the crossing, including its need to access the crossing during periods of high water.  Norfolk Southern did not present its own witnesses at the hearing but argued only that Breeden was not actually injured, that any injury was outweighed by the burden to Norfolk Southern, and that Breeden had an adequate remedy at

12

law.  The only evidence Norfolk Southern sought to introduce,
which was through cross-examination of Breeden's witness, was
the evidence regarding diminution in value and Breeden's lease
payments.  However, Breeden was not required to prove damages or
an inadequate remedy at law.  See Sonoma Development, 258 Va. at
169-70, 515 S.E.2d at 580-81; Spilling v. Hutcheson, 111 Va. at
183, 68 S.E. at 252; see also  Springer v. Gaddy, 172 Va. 533,
542, 2 S.E.2d 355, 358-59 (1939) ("An owner whose land is
subject to equitable restrictions cannot violate them, and when
suit is brought against him relieve his property from the
restriction by the payment of damages.") (internal quotation
marks omitted).  Furthermore, Norfolk Southern did not seek to
present evidence as to the hardship or burden that would be
imposed by enforcement of the covenant.[7]  Accordingly, the

---

[7] The decision in Perel does not support the view that this
case should be remanded for the circuit court to take evidence
regarding the appropriateness of an injunction. The circuit
court in Perel denied the request for an injunction on the
ground that the retaining wall did not violate the covenants.
We reversed, holding that the retaining wall did violate the
covenants and remanded the case to permit the homeowners to
prove that removal of the retaining wall would create a
hardship.  Perel, 267 Va. at 702, 594 S.E.2d at 905.  In this
case, Breeden proved the breach of a valid real covenant, and
Norfolk Southern did not seek to present any evidence of
hardship in the circuit court.  Similarly, in Levisa Coal, which
did not involve a real covenant, the circuit court denied
injunctive relief on the ground that Levisa Coal did not prove a
violation of a real property interest.  Holding that the circuit
erred in its ruling, we remanded the case for the circuit court

13

circuit court did not abuse its discretion in ordering the requested injunctive relief.[8]

C.    Right to a Jury

Norfolk Southern contends that the circuit court erred in hearing Breeden's request for a permanent injunction prior to the trial scheduled for Breeden's breach of contract claim because it deprived Norfolk Southern of its right to a jury.

When the circuit court scheduled the hearing on Breeden's request for an injunction, Norfolk Southern made an objection to the circuit court's decision to proceed with the injunction hearing prior to the scheduled trial, which the circuit court overruled.  Thereafter, Norfolk Southern filed a motion to reconsider on the grounds that the court's action violated Rule

---

to consider Levisa Coal's request for an injunction.  Levisa Coal, 276 Va. at 59, 662 S.E.2d at 52.

[8] Norfolk Southern also argues that because the covenant was affirmative rather than negative, the principles this Court has applied to restrictive covenants are inapplicable.  We have recognized that affirmative covenants respecting real property interests will run with the land.  See Chesapeake & Ohio Ry. Co. v. Willis, 200 Va. 299, 303-04, 105 S.E.2d 833, 837 (1958) (covenant to build fence was covenant running with the land and was enforceable unless broken by predecessors in title).  We have not previously made any distinction between the enforceability of affirmative covenants and negative covenants and see no reason to do so here.  See, e.g., Recco v. Chesapeake & Ohio Ry. Co., 32 S.E.2d 449, 453-54 (W.Va. 1944) (landowners entitled to seek specific performance compelling railroad to rebuild crossing pursuant to covenant in 1870 deed, and court will not balance the equities where a vested property right will be destroyed by violation of covenants).

14

3:22(e) and deprived Norfolk Southern of its right to a jury trial on issues of fact common to the claims for injunctive relief and damages.  The circuit court denied the motion to reconsider and proceeded with a hearing on Breeden's request for a permanent injunction.

It is well-established that a party has no right to a jury trial on a claim for equitable relief.  "[W]hen a party seeks injunctive relief, he must sue in equity.  In equity, a litigant has no constitutional right to trial by jury, and, absent a plea in equity, no statutory right."  Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986) (citations omitted); see also Code § 8.01-336(D).  Norfolk Southern did not file a plea in equity.  Therefore, Norfolk Southern did not have a constitutional or statutory right to a jury on Breeden's claim for injunctive relief.

While acknowledging that it had no right to a jury on the claim for injunctive relief, Norfolk Southern contends that the circuit court violated Rule 3:22(e) because the circuit court resolved factual disputes that were at issue in the breach of contract claim.  Rule 3:22(e) provides:

> In any case when there are both jury and
> non-jury issues to be tried, the court shall
> adopt trial procedures and a sequence of
> proceedings to assure that all issues
> properly heard by the jury are decided by
> it, and applicable factual determinations by

> the jury shall be used by the judge in
> resolving the non-jury issues in the case.

Under the plain language of the Rule, it only applies when there are jury issues to be tried. Although Breeden's breach of contract claim required it to prove damages resulting from the breach, Breeden was not required to prove monetary damages or quantify the harm resulting from the removal of the crossing to seek an injunction. See Sonoma Development, 258 Va. at 169-70, 515 S.E.2d at 580-81; Spilling, 111 Va. at 183, 68 S.E. at 252. Therefore, there were no factual determinations before the circuit court at the injunction hearing that were common to the breach of contract claim. Accordingly, Rule 3:22(e) was not applicable.

D.   Breeden's Motion for Attorney's Fees as Sanctions

Following the injunction hearing, Breeden moved for reimbursement of attorney's fees pursuant to the sanction provisions of Code § 8.01-271.1 on the grounds that Norfolk Southern asserted there were genuine issues of material facts in dispute in opposition to the motion for summary judgment but failed to produce any evidence at the hearing on the injunction to support its defenses to the injunction, thus rendering the injunction hearing unnecessary. Finding no violation of Code § 8.01-271.1, the circuit court denied Breeden's motion. Breeden assigns cross-error to this ruling and contends the circuit

16

court abused its discretion in denying its motion for attorney's fees.

In response to Breeden's motion for summary judgment, Norfolk Southern filed an opposition in which it asserted that Breeden must prove damages as an essential element of its case, and irreparable harm and lack of an adequate remedy at law for an injunction, all of which were in dispute.  Additionally, Norfolk Southern asserted that there were affirmative defenses pled by it, including the doctrine of first material breach, estoppel, laches, and unclean hands on which issues of fact remained.  Although Norfolk Southern did not contest laches and estoppel at the hearing, it insisted that the circuit court should determine whether Breeden proved actual injury and lack of an adequate remedy at law.  Norfolk Southern also argued the circuit court should weigh the burden to Norfolk Southern if injunctive relief was awarded against the harm to Breeden if it was not awarded.

Code § 8.01-271.1 provides, in pertinent part, that signature of an attorney on any pleading, written motion, or other writing constitutes a certificate that "to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension,

17

modification, or reversal of existing law" and that "it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The circuit court's decision to deny the motion for sanctions will only be reversed for an abuse of discretion. Northern Va. Real Estate v. Martins, 283 Va. 86, 103, 720 S.E.2d 121, 129 (2012).

The circuit court found that "[Norfolk Southern's] pleadings, written motions, and other papers were all well grounded in fact and warranted by existing law and that they were not interposed for any improper purpose." The circuit court further found that because Norfolk Southern believed that it was improper to bifurcate the injunction hearing and trial on damages, it "chose not to call company witnesses because it did not want to run the risk of a claim of waiver based on having presented evidence outside the scope of [Breeden's] proof." Therefore, according to the circuit court, Norfolk Southern's "trial strategy" decisions were also "well grounded and not done with any improper purpose."

We cannot conclude the circuit court abused its discretion. Norfolk Southern opposed the motion for summary judgment, among other reasons, on the grounds that Breeden was required to prove actual damages and an inadequate remedy at law on which it

18

asserted there were disputed issues of fact.  Norfolk Southern continues to maintain on appeal that the circuit court erred in failing to require proof of actual injury, the lack of an adequate remedy at law, and in failing to balance the equities in considering the injunction.  Although Norfolk Southern chose not to call its corporate witnesses and contest the issues of laches and estoppel at the injunction hearing and did not prevail on its arguments regarding Breeden's burden to prove damages, there is no evidence that Norfolk Southern's asserted defenses were not well-grounded or interposed for an improper purpose.

### III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>

SENIOR JUSTICE RUSSELL, with whom JUSTICE LEMONS and JUSTICE MILLETTE join, dissenting.

The following essential facts are undisputed:  The predecessors in title of the present parties entered into a "Crossing Agreement" in 1940 that granted reciprocal benefits and imposed reciprocal obligations upon them.  The Railroad's benefit was the consolidation of two former crossings into one. The landowners' benefit was the Railroad's obligation to provide a new, unguarded crossing over its right-of-way to the

19

landowners' property and to maintain it in perpetuity. The landowners' reciprocal obligation was to ensure that the crossing was a private one that "shall be used solely in their own interest and for their own benefit." The landowners also agreed to "indemnify and save harmless the [Railroad] from any and all claims for damage or injury to [any] person, including death, or property, resulting from their use of said grade crossing." The landowners also agreed that "the said private crossing shall not be converted at their demand or request or with their consent into a public crossing." The agreement was made binding upon the parties' "heirs, executors, administrators, successors and assigns." The agreement was recorded among the land records and constitutes a covenant running with the land.

The present parties both insist upon their benefits under the 1940 agreement, but both have refused to honor the reciprocal obligations it imposes upon them. First, the present owner leased a part of the property to a residential tenant without imposing any limitation on the tenant's right to use the crossing. The tenant was injured while using the crossing and sued the Railroad. The Railroad settled the case with the tenant and claimed indemnity from the owner under the 1940 agreement. The circuit court held that the indemnity agreement was inapplicable because the tenant had an independent right to

20

use the crossing and that his use at the time of the accident was not as agent or for the benefit of the owner. The Railroad, taking the position that the owner was now accepting all of its benefits under the 1940 agreement while successfully evading all its reciprocal obligations, closed the crossing. Such was the posture of the case when it came before the circuit court on the owner's claim for a permanent injunction.

Permanent injunctions and decrees of specific performance are the most drastic remedies courts of equity are empowered to award, but they are nevertheless equitable remedies. They are to be imposed only where, after careful consideration of the facts and circumstances of each particular case, the chancellor determines that such remedy is necessary to attain the most equitable result.

Here, the circuit court refused to hear evidence of the facts and circumstances relating to the propriety of an injunction, apparently because the court regarded injunctive relief automatically justified by the owner's showing that the Railroad had closed the crossing. The court may have relied on statements we made in an earlier case involving breach of a restrictive covenant, where we said that in such a case an injunction is granted "almost as a matter of course" and that "[t]he amount of damages, and even the fact that the plaintiff ha[d] sustained any pecuniary damages, are wholly immaterial."

21

Spilling v. Hutcheson, 111 Va. 179, 183, 68 S.E. 250, 252 (1910).

In a recent case involving a retaining wall erected in breach of a restrictive covenant, however, we departed from the sweeping language in Spilling.  In Perel v. Brannan, 267 Va. 694, 594 S.E.2d 899 (2004), we said:

> While the retaining wall is clearly in violation of the covenants, [the plaintiff] is not automatically entitled to have the retaining wall removed.  When parties have a dispute over an alleged violation of a restrictive covenant, the plaintiff, or covenantee, may file suit in the court for equitable enforcement of the restrictive covenant.  A restrictive covenant may be enforced by injunctive relief or through specific performance.  The party seeking enforcement . . . bears the burden of proving the validity and meaning of the covenant [and that it] has been violated by the acts of the defendant.
>
> . . . .
>
> A defendant may avoid imposition of the remedy requested if such a remedy would create a hardship or injustice that is out of proportion to the relief sought, if performance by the defendant would be impossible, or if the enforcement  of the decree would be unusually difficult for the court.  However, on the questions of hardship, injustice, or impossibility, the defendant bears the burden of proving the elements of the defense . . . . [I]t is for the defendant to show by way of defense that it is no longer able to perform the covenant consistently with its duty to the public in general, or that performance thereof will be burdensome and oppressive or otherwise inequitable.

22

Id. at 699-701, 594 S.E.2d at 904-05 (citations, footnotes, and internal quotation marks omitted) (emphasis added). We concluded by remanding the case to the circuit court with specific instructions to hear evidence concerning the remedy to be ordered. Id. at 702, 594 S.E.2d at 905.

After Perel, we considered a case that, like the present case, involved a continuing trespass. In Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 662 S.E.2d 44 (2008), we said:

> Under traditional equitable principles, a chancellor may enjoin a continuing trespass. However, even in a case involving a continuing trespass the guiding principle which remains constant is that the granting of an injunction is an extraordinary remedy and rests on the sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case. Thus, in a case of a continuing trespass, such as the present case, we have stated that if "the loss entailed upon [the trespasser] would be excessively out of proportion to the injury suffered by [the owner], or a serious detriment to the public, a court of equity might very properly deny the injunction and leave the parties to settle their differences in a court of law."[*]

---

[*] The present case involves both of the last two questions. Because of the result in the indemnity action, the Railroad will be exposed in the future to liability for injuries sustained by any tenant or tenant's invitee using the crossing without any protection from the indemnity for which its predecessor bargained in 1940. Judges are not prescient and the results of future changes, such as population growth and density, changes in land use and the need for additional rail capacity and traffic cannot be foreseen. If, for instance, a tenant should

> We have also observed that unless a party is entitled to an injunction pursuant to a statute, a party must establish the "traditional prerequisites, i.e., irreparable harm and lack of an adequate remedy at law" before a request for injunctive relief will be sustained.

276 Va. at 61, 662 S.E.2d at 53 (citations and some quotation marks omitted).

In Levisa Coal, as in Perel, we remanded the case to the circuit court with specific direction to grant the parties the opportunity to present evidence on the question whether injunctive relief would be appropriate under the facts and circumstances of the case. Id. at 63, 662 S.E.2d at 54.

Here, the owner's complaint included counts for damages at law as well as equitable relief. The case was set for a two-day jury trial on all issues to begin on March 7, 2013. After denying the owner's motion for summary judgment, the court, over the Railroad's objection, granted a motion by the owner to set the case for trial on the issue of injunctive relief only, to begin on February 27, 2013, eight days before the jury trial.

At that proceeding, the court refused to afford the parties an opportunity to present evidence of the facts and circumstances of the case, ruling, before the owner's evidence

---

decide to hold a political rally on the property, or if the present residence were succeeded by apartment or condominium buildings, the Railroad's exposure to liability claims would increase exponentially and the crossing would become a "serious detriment to the public."

was completed, that any further evidence offered by either party would be immaterial.  The court essentially took the view that the undisputed fact that the Railroad had closed the crossing automatically required entry of a permanent injunction.

In my view, the circuit court erred in disregarding the traditional equitable principles made specific in Perel and Levisa Coal.  The parties should have been afforded an opportunity to present evidence of all the relevant circumstances that might inform the chancellor's discretion in determining the appropriate remedy.  I would make the same disposition we made in those cases, reverse the decree and remand the case to the circuit court with direction to afford the parties a full opportunity to present evidence.

On remand, if any material issues of fact are disputed, the parties would be entitled to jury trial of those issues pursuant to Rule 3:22(e).  If the court should decide to leave the parties to their legal remedies, their constitutional right to jury trial would, of course, be unimpaired.

For the foregoing reasons, I respectfully dissent.